OPINION
{¶ 1} Gregory Williamson, Jr. appeals from his conviction and sentence following guilty pleas to charges of gross sexual imposition and rape of a child under age thirteen.
 {¶ 2} Williamson advances two assignments of error on appeal. First, he contends the trial court erred in denying a pre-sentence motion to vacate his guilty *Page 2 
pleas. Second, he claims he was denied his constitutional right to effective assistance of counsel.
 {¶ 3} The record reflects that Williamson entered his pleas on September 25, 2006 as part of a negotiated agreement reached during trial. In exchange for the pleas, the agreement provided for Williamson to receive an aggregate ten-year prison sentence. On October 25, 2006, however, he moved to vacate the pleas. Williamson, who was being represented by new counsel, alleged in his motion that he did not consider the effect of his pleas and did not have a complete understanding of the possible sanctions. He also proclaimed his innocence and raised objections about the representation provided by his former attorney, Don Little.
 {¶ 4} The trial court held a November 9, 2006 hearing on Williamson's motion. During the hearing, he elaborated on his reasons for wanting to vacate his pleas. Williamson explained that he felt like he had "no choice" but to plead guilty. He also complained about Little's failure to have other family members tested for sexually transmitted diseases after tests revealed that Williamson and the three-year-old victim, his cousin, both had gonorrhea. In addition, Williamson complained generally about Little's failure to "interview other witnesses" and failure to visit him more than five times for approximately twelve hours.
 {¶ 5} Little also testified at the hearing. He addressed various motions that he filed and recalled discussing the case with Williamson and his father. Little explained that he strongly recommended accepting a plea deal with an agreed ten-year sentence because he believed Williamson would be convicted at trial and would face a life sentence. Despite his client's protestations of innocence, Little was aware of family *Page 3 
members who would testify that Williamson had admitted engaging in sexual activity with the victim. Little also knew that Williamson and the victim both had tested positive for gonorrhea. In light of these facts and the trial court's adverse rulings on various pretrial motions, Little repeatedly encouraged Williamson to accept the plea deal. In Little's words, he "leaned on him to do that * * * because I thought it was in his best interest."
 {¶ 6} The trial court overruled Williamson's motion on December 14, 2006. Although Williamson had filed the motion before sentencing, the trial court treated it as a post-sentence motion because he knew what his sentence was going to be when he filed the motion. Applying the "manifest injustice" standard applicable to post-sentence motions under Crim. R. 32.1, the trial court found no basis for withdrawing the pleas. The trial court also opined that "[t]he defendant appears to have merely hired new counsel and had a change of heart with respect to his plea." After overruling Williamson's motion to vacate his pleas, the trial court imposed an aggregate ten-year prison sentence. This timely appeal followed.
 {¶ 7} In his first assignment of error, Williamson contends the trial court abused its discretion in not vacating his guilty pleas. He argues that the trial court improperly applied the standard for reviewing post-sentence plea-withdrawal requests to his pre-sentence motion. Under the pre-sentence standard, he asserts that his motion should have been sustained. In response, the State concedes that the trial court judged Williamson's motion under the wrong standard. It argues, however, that the record reveals harmless error because Williamson plainly failed to satisfy the standard governing pre-sentence plea-withdrawal requests as well. *Page 4 
 {¶ 8} As an initial matter, we agree that the trial court applied the wrong standard to Williamson's motion. Crim. R. 32.1 provides:
 {¶ 9} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 10} Under the foregoing rule, a pre-sentence motion to vacate a guilty plea "should be freely and liberally granted." State v. Xie
(1992), 62 Ohio St.3d 521, 527. Even under this standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion. Id. The pre-sentence standard, however, is far more lenient than the "manifest injustice" standard applicable to post-sentence motions. State v. Fugate, Montgomery App. No. 21574, 2007-Ohio-26, ¶ 10.
 {¶ 11} When a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise. State v. Wallen, Montgomery App. No. 21688, 2007-Ohio-2129, ¶ 22. We also have recognized, however, that this reasoning does not apply to agreed sentences. "Where a sentence is agreed to as part of a plea bargain, and the trial court has indicated that it is joining in the agreement, there has been no `unpleasant surprise' to the defendant after `testing the sentencing waters,' which is the rationale for the stricter standard for a post-sentence motion to withdraw a plea." Id. Therefore, when a defendant files a pre-sentence motion to vacate a plea *Page 5 
entered as part of a plea deal with an agreed sentence, the motion still should be treated as a pre-sentence motion and judged under the more lenient standard. Id.
 {¶ 12} Although the trial court erred in applying the post-sentence "manifest injustice" standard to Williamson's motion, we are persuaded that its error was harmless beyond a reasonable doubt. Ordinarily, we might hesitate to find, with any degree of certainty, that the trial court would have reached the same conclusion under the more lenient standard governing pre-sentence motions. See Fugate, supra, at ¶ 16 ("Nevertheless, because the discretion reposed in the trial court is both liberal and broad, we cannot say with the necessary degree of confidence that the trial court's error in applying the post-sentence standard was harmless.").
 {¶ 13} In the present case, however, we are comfortable reaching such a conclusion for at least two reasons. First, although it applied the wrong standard to the plea-withdrawal motion, the trial court also found that Williamson appeared "to have merely hired new counsel and had a change of heart with respect to his plea." In Wallen, we observed that "[a] mere change of heart has been found to be an insufficient basis for granting a pre-sentence motion to withdraw a plea." Wallen, supra, at ¶ 23. Even under the more lenient standard, a defendant must show a "reasonable and legitimate basis for the withdrawal of the plea."Xie, 62 Ohio St.3d at 527. A change of heart is not enough, and the trial court's finding regarding Williamson's true motivation is entitled to deference.
 {¶ 14} Second, the record reflects that Williamson did not have legitimate grounds for withdrawing his pleas. Williamson alleged in his motion that he did not consider the effect of his pleas and did not have a complete understanding of the *Page 6 
possible sanctions. These assertions are belied by the transcript of his Crim. R. 11 plea hearing. In his motion and at the plea-withdrawal hearing, Williamson also complained about the representation provided by Little. By Williamson's own admission, however, Little met with him approximately a half-dozen times for about twelve hours. The trial court noted that Little, an attorney with more than forty years of experience, also filed various motions on Williamson's behalf, attended hearings where he advocated for Williamson, and obtained a plea agreement that reduced a possible life sentence to a ten-year term.
 {¶ 15} As for Williamson's complaint that he felt like he had "no choice" but to plead guilty, Little admitted that he "leaned on" his client a bit. Based on our review of the transcripts, however, Little did no more than what any good attorney would do. He strongly believed that Williamson would be convicted and that accepting the plea deal was in his client's best interest. He conveyed these opinions to Williamson and encouraged him to accept the State's offer. During the Crim. R. 11 hearing, Williamson admitted that no one forced or coerced him into accepting the plea agreement and that he did so of his own free will. Finally, Williamson complained about Little's failure to compel other relatives to be tested for sexually transmitted diseases. Little explained, however, that he had no authority to compel such testing.
 {¶ 16} For the foregoing reasons, we conclude that Williamson was not entitled to withdraw his pleas even under the pre-sentence standard applicable to his motion. Williamson's change of heart was not sufficient to justify withdrawal of the pleas, and the record does not reflect any legitimate reason for allowing him to do so. Therefore, the trial court's application of the wrong standard to his motion constituted harmless error. *Page 7 
The first assignment of error is overruled.
 {¶ 17} In his second assignment of error, Williamson raises an ineffective assistance of counsel claim based on his attorney's failure to file a timely notice of alibi. This argument concerns Little's acts of faxing of a notice of alibi to the State on Friday, September 22, 2006 and filing it prior to trial on Monday, September 25, 2006. The State objected to the notice based on untimeliness. The trial court agreed with the State and ruled that Williamson's alibi witness, his father, would not be permitted to testify. The trial court also ruled, however, that if Williamson himself took the stand, he could provide any alibi testimony that he wished.
 {¶ 18} On appeal, Williamson argues that Little provided deficient representation by filing an untimely alibi notice. He further contends the trial court's rejection of his alibi witness prejudiced him by depriving him of "key testimony that might have resulted in acquittal." He also claims the rejection of his alibi witness caused him to feel "obligated to accept a plea offer that he had repeatedly rejected." Upon review, we find Williamson's argument to be without merit.
 {¶ 19} Ineffective assistance of counsel claims are evaluated under the two-prong analysis set forth in Strickland v. Washington (1984), 466 U.S. 668. To reverse a conviction based on ineffective assistance of counsel, an appellant first must demonstrate that his counsel's conduct was deficient in that it fell below an objective standard of reasonableness. When considering this issue, trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. Id. at 690. The second prong ofStrickland requires a showing that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the *Page 8 
result of the proceeding would have been different. Id. at 687.
 {¶ 20} In the present case, Williamson at least arguably has waived his ability to raise an ineffective assistance of counsel claim. This is so because the entry of a voluntary guilty plea waives such a claim except to the extent that counsel's deficient performance causes the plea to be less than knowing and voluntary. See, e.g., State v.Kidd, 168 Ohio App.3d 382, 385, 2006-Ohio-4008; State v. Hatton, Montgomery App. No. 21153, 2006-Ohio-2670, ¶ 6. But even setting aside the waiver issue, which has not been raised by the State, the record does not portray any constitutionally ineffective assistance of counsel.
 {¶ 21} During the hearing on Williamson's motion to vacate his guilty pleas, attorney Little explained that he did not file an alibi notice sooner because he could not obtain specific dates from the State as to when the alleged offenses occurred. Without these dates, he testified that it was impossible to frame an alibi. The record supports Little's explanation. The two indictments against Williamson allege that his offenses were committed between June 1, 2005 and January 31, 2006. The prosecutor used the same dates when reading the factual background into the record.
 {¶ 22} The problem with Little's explanation, however, is that nothing in the record reflects that he ever received more specific offense dates from the prosecutor. If the State had provided a narrowed time frame shortly before trial, Little might have been justified in filing a notice of alibi on the eve of trial. But the State never reduced the time frame for the offenses. Despite the lack of specific dates, Little still found it in Williamson's best interest to present an alibi defense. Having elected to do so, he had an obligation to file a timely alibi notice. *Page 9 
 {¶ 23} Assuming, arguendo, that Little provided deficient representation by making an untimely filing, the absence of Williamson's father as an alibi witness almost certainly had no impact on the outcome of the proceedings. The notice of alibi states that Williamson "was not in the presence of the alleged victim for the last six days of January, 2006, and the first day of February." Even if Williamson had gone to trial and his father had corroborated this alibi, there is no reasonable likelihood that a jury would have acquitted Williamson. As the State points out, the alibi did not foreclose Williamson's access to the victim from June 1, 2005 through January 25, 2006. Nor did it explain why Williamson and the three-year-old victim had the same sexually transmitted disease. It also did not account for Williamson's own alleged statements to family members admitting that he had engaged in sexual activity with the victim. Williamson's alibi, which accounted for just one week out of an eight-month time span, was itself so inconsequential that the absence of corroborating testimony from his father did not result in any prejudice under Strickland.
 {¶ 24} We also find no merit in Williamson's suggestion on appeal that he would not have entered his guilty pleas but for his father's exclusion as an alibi witness. The record is devoid of any evidence to support this contention. Williamson's motion to vacate his pleas does not mention the exclusion of his father as a witness as a motivating factor. Nor did Williamson ever mention the tardy alibi notice or the court's exclusion of his father as an alibi witness during the hearing on his motion to vacate the pleas. Moreover, we note that Williamson expressly rejected a plea agreement calling for a ten-year sentence immediately after the trial court excluded his father as an alibi witness. This further undermines his claim, which is unsupported by any evidence, that the trial court's exclusion of his father as a witness induced him to accept the State's *Page 10 
offer. Absent any showing of prejudice under the second prong ofStrickland, we overrule Williamson's second assignment of error.
 {¶ 25} The judgment of the Montgomery County Common Pleas Court is hereby affirmed.
DONOVAN, J., and WALTERS, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
Copies mailed to:
 Hon. Mary L. Wiseman *Page 1