[Cite as *State v. Simpson*, 2011-Ohio-6181.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24266 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 08-CR-2913 |
| v. | : | |
| | : | |
| JAMES SIMPSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 2nd day of December, 2011.

· · · · · · · · · · ·

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

KENT J. DEPOORTER, Atty. Reg. #0058487, 7501 Paragon Road, LL Level, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.

        James Simpson appeals from his conviction and sentence following guilty pleas to

charges of murder, felonious assault, domestic violence, evidence tampering, and grand theft.

        Simpson advances two assignments of error on appeal. First, he contends the trial court

erred in denying his pre-sentence motion to withdraw the guilty pleas when he "was not provided with adequate representation." Second, he claims the trial court erred in refusing to allow him to withdraw the pleas on the basis that they were not entered knowingly, voluntarily, and intelligently.

The charges against Simpson stemmed from a fatal attack on his long-time girlfriend, Allison Beaty. Police discovered Beaty dead in the basement of a home she shared with Simpson. She was found tied to a chair with a sheet stuffed in her mouth. Following his arrest, Simpson confessed to punching Beaty repeatedly with a closed fist, choking her, and then dragging her to the basement. He explained that he stuffed the sheet in her mouth to keep her quiet. Simpson told investigators that he had "snapped" while confronting Beaty about her desire to end their relationship and about the fact that she was seeing another man.

Simpson initially entered pleas of not guilty and not guilty by reason of insanity. He then underwent two mental examinations, both of which established that he was sane at the time of the incident. Simpson later agreed to plead guilty to all charges, and the trial court agreed, over the State's objection, to impose the minimum aggregate sentence available, fifteen years to life in prison.

After the guilty pleas were accepted, Simpson wrote the trial court a letter asking to withdraw them. In response, the trial court appointed new counsel, who filed a formal motion to withdraw the guilty pleas. In support of the motion, Simpson argued that he had a "complete defense" to the murder charge because he should have been charged with manslaughter. He also argued that his "mental condition" tainted the plea process, rendering his guilty pleas not knowing, intelligent, and voluntary. (Doc. # 215). The trial court discussed

the motion with counsel at length during an August 5, 2010 scheduling conference, a transcript of which is part of the record. The trial court later overruled the motion in an eleven-page decision filed August 19, 2010. (Doc. #221). Thereafter, the trial court sentenced Simpson to an aggregate term of fifteen years to life in prison. This appeal followed.[1]

In his first assignment of error, Simpson contends the trial court should have allowed him to withdraw his guilty pleas for two reasons: (1) his trial counsel at the time of the pleas had a conflict of interest and (2) he should have been charged with voluntary manslaughter rather than murder and wanted to seek a voluntary manslaughter instruction at trial.

Before turning to the merits of Simpson's argument, we must determine the standard applicable to his motion. Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under the foregoing rule, a pre-sentence motion to vacate a guilty plea "should be freely and liberally granted." *State v. Xie* (1992), 62 Ohio St.3d 521, 527. Nevertheless, even under the pre-sentence standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion. Id. The pre-sentence standard, however, is far more lenient than the "manifest injustice" standard applicable to post-sentence motions. *State v. Fugate*, Montgomery App. No. 21574, 2007-Ohio-26, ¶10.

When a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a pre-sentence motion to vacate his plea ordinarily should

---

[1]After Simpson filed his notice of appeal, he filed a pro se post-sentence motion to withdraw his guilty pleas. That motion is not part of the present appeal.

be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise. *State v. Wallen*, Montgomery App. No. 21688, 2007-Ohio-2129, ¶22. We also have recognized, however, that this reasoning does not apply to agreed sentences. "Where a sentence is agreed to as part of a plea bargain, and the trial court has indicated that it is joining in the agreement, there has been no 'unpleasant surprise' to the defendant after 'testing the sentencing waters,' which is the rationale for the stricter standard for a post-sentence motion to withdraw a plea." Id. Therefore, when a defendant files a pre-sentence motion to vacate a plea entered as part of a plea deal with an agreed sentence, the motion still should be treated as a pre-sentence motion and judged under the more lenient standard. Id.; see, also, *State v. Williamson*, Montgomery App. No. 21965, 2008-Ohio-4727, ¶11. On the other hand, the fact that the defendant knew what the ultimate sentence would be may be a factor that the trial court could consider to determine whether the defendant's request to withdraw is simply a change of heart.

When Simpson entered his guilty pleas in the present case, the trial court agreed to impose an aggregate sentence of fifteen years to life in prison. Because the trial court agreed to this sentence, Simpson certainly knew about it prior to disposition. He could not have been unpleasantly surprised, however, because he had been made aware of the sentence when he entered the guilty pleas. Therefore, Simpson's pre-sentence motion to withdraw those pleas must be treated as a pre-sentence motion even though he knew, before disposition, the sentence he would receive.[2]

---

[2]Out of caution, the trial court analyzed Simpson's motion separately as a pre-sentence and a post-sentence motion to withdraw his pleas. Our review will focus on the pre-sentence analysis.

But even under the more lenient pre-sentence standard, "a defendant must show a reasonable and legitimate basis for the withdrawal of the plea." *Williamson*, at ¶13, citing *Xie*, at 525. "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. Id. Likewise, a trial court's ultimate decision to grant or deny a pre-sentence motion to withdraw a guilty plea is subject to review for an abuse of discretion. *Fugate*, at ¶10.

Upon review, we see no abuse of discretion in the trial court's denial of Simpson's motion to withdraw his guilty pleas. We reach this conclusion because Simpson failed to establish a "reasonable and legitimate basis" for withdrawing the pleas. The record supports the trial court's finding that he simply had a change of heart.

On appeal, Simpson first contends he should have been permitted to withdraw his guilty pleas because his attorney had a conflict of interest. In particular, he claims his attorney at the time of the change-of-plea hearing was a friend of the victim's brother. In response, the State correctly notes that Simpson's plea-withdrawal motion never asked the trial court to consider the friendship between his attorney and the victim's brother as grounds for vacating the pleas. In any event, that friendship did not provide Simpson with grounds for withdrawing his guilty pleas because he knew about it *before* he entered the pleas. During the change-of-plea hearing, Simpson acknowledged knowing that his attorney and the victim's brother coached youth football together. Simpson expressly waived "any potential conflicts or any problems with that relationship." (Change-of-plea transcript at 16). Therefore, the friendship did not constitute a reasonable and legitimate basis for withdrawing the guilty pleas.

We are equally unpersuaded by Simpson's argument that he should have been permitted to withdraw his guilty pleas because he wanted to seek a voluntary manslaughter instruction at trial. Once again, the record reflects that Simpson was aware of the possibility of a manslaughter instruction, and actually discussed the issue with his attorney, prior to entering his guilty pleas. Simpson concedes that one of the psychologists who examined him to determine his sanity mentioned the idea of a manslaughter charge. In addition, the record contains a letter from Simpson to the trial court in which he admits that his attorney advised him, prior to entering his guilty pleas, that he would be "unable to convince a jury to find [him] guilty of a lesser charge." We agree with this assessment. In fact, we question whether Simpson would even have been entitled to a voluntary manslaughter instruction.

The record reflects that Simpson knew his girlfriend was seeing another man before the incident in question. In his taped confession, Simpson stated that he "snapped" while talking to her about the issue and about wanting to leave him. We see no sufficient provocation to induce sudden passion or a fit of rage reasonably resulting in Simpson's use of deadly force. Even more extreme provocation than exists here has been found insufficient. See *State v. Shane* (1994), 63 Ohio St.3d 630, 637 ("The killing of a spouse* * * by a spouse * * * who has just been made aware of the victim spouse's adultery simply is not an acceptable response to the confession of infidelity." [parentheticals deleted]); *State v. Snyder*, Tuscarawas App. No. 10AP060021, 2011-Ohio-3334, ¶49 ("Even if we believe appellant's claim that [the victim] continued to taunt him about other men she had slept with, such evidence was not sufficient to incite a reasonable person to the use of deadly force. The court did not err in refusing appellant's requested instruction on voluntary manslaughter."). As a result, hope for a

voluntary manslaughter instruction and conviction did not constitute a reasonable and legitimate basis for withdrawing Simpson's guilty pleas. We find no error in the trial court's determination that Simpson simply had a change of heart after entering his guilty pleas. Accordingly, we overrule his first assignment of error.

In his second assignment of error, Simpson claims the trial court erred in refusing to allow him to withdraw the guilty pleas on the basis that they were not entered knowingly, voluntarily, and intelligently. In support, Simpson contends his limited education and intelligence, combined with his unawareness of his attorney's friendship with the victim's brother, rendered the pleas invalid.

Having reviewed the two psychological evaluations in the record, as well as a transcript of the change-of-plea hearing and other materials in the record, we see no indication that Simpson was incapable of knowingly, voluntarily, and intelligently entering guilty pleas. Simpson's own letters and pro se filings below undermine his effort to show that he lacked the capacity to enter valid pleas. Moreover, his responses to questions at the change-of-plea hearing indicate a full understanding of what was happening. Finally, the record belies Simpson's claim that he entered his guilty pleas without knowing about the friendship between his attorney and the victim's brother. As noted above, the trial court discussed that issue with Simpson before he entered his guilty pleas. In short, we see nothing to suggest that Simpson's guilty pleas were not knowingly, voluntarily, and intelligently entered. His second assignment of error is overruled.

The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Carley J. Ingram
Kent J. DePoorter
Hon. Steven K. Dankof