[Cite as *State v. Patterson*, 2014-Ohio-4962.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

TROY PATTERSON

       Defendant-Appellant


Appellate Case No. 26015

Trial Court Case No. 10-CR-812/1

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 7th day of November, 2014.

. . . . . . . . . . .


MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. #0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Troy Patterson appeals from his conviction and sentence following a guilty plea to one count of aggravated robbery and one count of aggravated burglary.

{¶ 2}    Patterson advances two assignments of error. First, he contends the trial court erred in denying his pre-sentence motion to withdraw the guilty plea. Second, he claims ineffective assistance of counsel rendered the plea unknowing, unintelligent, and involuntary.

{¶ 3}    The record reflects that Patterson faced a seventeen-count indictment on charges including aggravated burglary, aggravated robbery, kidnapping, felonious assault, and related firearm specifications. On August 20, 2013, he pled guilty to one count of aggravated robbery and one count of aggravated burglary. In exchange, all other counts and all firearm specifications were dismissed. The plea agreement provided for a prison sentence within a range of three to nine years.

{¶ 4}    On September 23, 2013, Patterson made a pre-sentence request to withdraw his guilty plea.[1] The trial court held an October 21, 2013 evidentiary hearing on the plea-withdrawal motion. It later filed a decision, order, and entry overruling the motion. Following a sentencing hearing, the trial court imposed two concurrent eight-year prison terms. This appeal followed.

{¶ 5}    As noted above, Patterson's first assignment of error challenges the trial court's denial of his plea-withdrawal motion. We review that ruling for an abuse of discretion, which typically involves a failure to exercise sound, reasonable, and legal decision-making. *State v. Perkins*, 2d Dist. Montgomery No. 25808, 2014-Ohio-1863, ¶ 27. A pre-sentence

---

[1] Patterson made the request in a September 18, 2013 letter to the trial court. The trial court treated the letter, which was filed on September 23, 2013, as a motion. (Doc. #221).

plea-withdrawal motion under Crim.R. 32.1 "'should be freely and liberally granted.'" *Id.* at ¶ 29, quoting *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). This does not mean, however, that a defendant has an absolute right to withdraw his plea before sentencing. *Id.* at ¶ 29. Even under the pre-sentence standard, "a defendant must show a reasonable and legitimate basis for the withdrawal of the plea." (Citations omitted) *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 10. "'A change of heart is not enough,'" and "a trial court's finding regarding a defendant's true motivation is entitled to deference."[2] *Id.*

{¶ 6} Ohio courts often consider nine factors when evaluating a plea-withdrawal motion. Patterson urges us to apply those factors here. They include:

(1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced

---

[2] In an abundance of caution, the trial court addressed Patterson's motion separately under the standards governing pre-sentence and post-sentence plea-withdrawal motions. For purposes of our analysis herein, we will apply the more lenient pre-sentence standard. We will do so for two reasons. First, although Patterson was told that he would receive a sentence between three and nine years in prison when he entered his plea, the trial court did not tell him where his sentence would fall within that range. Therefore, we believe his subsequent motion to withdraw his plea is better analyzed as a pre-sentence motion. *See State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 13. Second, in our analysis infra, we conclude that Patterson failed to satisfy the relatively lenient standard governing the withdrawal of a plea before sentencing. That being so, it follows that he necessarily could not satisfy the stricter, "manifest injustice" standard governing post-sentence plea-withdrawal motions.

by withdrawal of the plea.

(Citations omitted) *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 19.

**{¶ 7}** Consideration of the foregoing factors involves a balancing test. No single factor is dispositive. *Id.* at ¶ 20. In reviewing the various factors, the ultimate issue remains whether a reasonable and legitimate basis for withdrawing the plea exists. The question for us is whether the trial court abused its discretion in making this determination. *Id.*

**{¶ 8}** On appeal, Patterson concedes that the first four factors do not support withdrawal of his plea. He admits that his counsel was highly competent, that he received a full Crim.R. 11 hearing, that the trial court held a full hearing on his motion, and that the trial court gave his motion full and fair consideration. He also concedes that factor seven does not help him because he understood the nature of the charges and the possible penalties.

**{¶ 9}** With regard to the fifth factor, Patterson claims his plea-withdrawal request was made within a reasonable time. We agree. He entered his plea on August 20, 2013 and asked to withdraw it less than one month later. As for the ninth factor, we see no prejudice to the State if Patterson's plea were withdrawn. Such prejudice typically involves witnesses becoming unavailable. *Preston* at ¶ 31. Here we see no evidence of witness unavailability, particularly in light of the short amount of time that passed between the entry of Patterson's plea and his request to withdraw it.

**{¶ 10}** The remaining two factors are factor six and factor eight. As for the sixth factor, Patterson did identify specific reasons for his withdrawal request. In his motion and during the plea-withdrawal hearing, he asserted that his attorney had pressured him into pleading guilty and falsely had assured him of a three-year sentence. He also stated that he had affidavits supporting

his innocence. As for the eighth factor, Patterson asserts that he was not guilty and that he had a complete defense to the charges.

{¶ 11} Given that the overriding issue in the plea-withdrawal context is whether a reasonable and legitimate basis exists for withdrawing a plea, the sixth and eighth factors lie at the heart of Patterson's motion. In its written decision denying the motion, the trial court credited the testimony of Patterson's trial counsel and found Patterson's own testimony lacking in credibility. In particular, the trial court found that counsel did not pressure Patterson into pleading guilty and did not assure him of a three-year sentence. With regard to the affidavits on which Patterson relied, the trial court noted that Patterson had possessed them *before* he entered his guilty plea. The trial court also found the credibility of the affidavits questionable given the circumstances under which Patterson obtained them. Ultimately, the trial court concluded that Patterson simply had a change of heart while sitting in jail after entering his plea and that no reasonable and legitimate basis existed for withdrawing the plea.

{¶ 12} Upon review, we see no abuse of discretion in the trial court's decision. The charges against Patterson involved an October 2007 home invasion during which five victims were present. (Tr. at 61). During an investigation of the incident, one of the perpetrators, Jamie Harris, identified Patterson as a participant in the home invasion. (*Id*. at 62). Two adult occupants of the home, James and Charlene Easterling, then identified Patterson in a photo spread as one of the perpetrators. (*Id*. at 63). A third occupant of the home, T.T., who was four or five-years old, also identified Patterson in a photo spread. (*Id*. at 64). In addition, a second co-defendant, Lloyd Jefferson, implicated Patterson in the home invasion. (*Id*. at 65).

{¶ 13} Patterson eventually was located in California and extradited to Ohio. (*Id*. at 66).

He provided an alibi, which police investigated and thoroughly discredited. (*Id*. at 66-81). Patterson's trial counsel, H. Charles Wagner, investigated the alibi and reviewed information he obtained from the police. The results of the alibi investigation made Patterson's case "not as good as [he] thought it was going to be." (*Id*. at 101). Therefore, he decided to discuss a plea deal with Patterson. (*Id*. at 102). The plea agreement ultimately reached provided for a sentence between three and nine years in prison. (*Id*. at 105-106). Wagner testified that he never assured Patterson of a three-year sentence. (*Id*. at 107, 114). To the contrary, he told Patterson he believed something more than a three-year sentence would be imposed. (*Id*. at 106).

**{¶ 14}** While being held in jail, and before accepting the plea deal, affidavits were obtained from James and Charlene Easterling in which they recanted their earlier photo identifications. (*Id*. at 108-109). Patterson had been incarcerated with James Easterling and they communicated with each other. Wagner reviewed the affidavits with Patterson and opined that they were "very suspect." (*Id*. at 113). During the plea-withdrawal hearing, Wagner explained why he held this belief:

> Well, [the Easterlings] had seen him for the very first time supposedly on October 31, 2007. Had positively picked him out of a photo lineup approximately 18 months after the offense, and then positively say it wasn't him after having identified him nearly six years later. That I thought was suspect. Especially since Mr. Easterling had been locked up with Mr. Patterson in the cellblock at the Montgomery County Jail and they were passing notes back and forth with each other.

(*Id*. at 113).

**{¶ 15}**   In its November 18, 2013 written decision, the trial court found that Wagner did not assure Patterson of a three-year sentence. The trial court also found that Patterson's plea forms belied his claim that Wagner had pressured him. (Doc. #234 at 10-12). On these issues, the trial court explicitly did "not find Patterson's testimony or claim that he was pressured by Mr. Wagner, nor that he was promised a specific sentence, to be credible." (*Id*. at 12-13). The trial court also noted that it had been made clear during the initial plea hearing that Patterson was not being promised a particular sentence within the three-to-nine-year range. (*Id*. at 14). In fact, the trial court specifically had advised Patterson that "'there is no agreement within that [three-to-nine-year] range.'" (*Id*. at 15). With regard to the affidavits, the trial court noted that Patterson had them in his possession and discussed them with Wagner before his plea. (*Id*. at 12).

**{¶ 16}**   In finding that Patterson merely had experienced a change of heart after entering his plea, the trial court reasoned:

> * * * When considered under the pre-sentencing standard, the court finds that Defendant has merely had a change in heart. He talked with attorneys after his plea, none of whom could know the information known by Mr. Wagner, nor who could have fully understood and appreciated the nuances of the situation, particularly since Mr. Patterson did not appear to accurately relate information, as evidenced by his testimony at the oral hearing. It appears that whomever Patterson spoke with raised his hopes about the possibility that that attorney could do something different than Wagner. From the court's understanding of the evidence, as indicated at the time of the oral hearing, Mr. Wagner who is a highly competent

and seasoned criminal defense attorney, did everything that was appropriate and necessary in Patterson's defense. Patterson appears to simply have had a change of heart when some other attorneys suggested otherwise after Patterson's plea. The court finds that Patterson has not stated a reasonable and legitimate basis for the withdrawal of his plea. Patterson admitted his guilt in his plea and has not suggested that he obtained additional or different evidence after his plea, other than that some attorney whom he talked with suggested that certain affidavits may be useful in court. The utility of those affidavits, however, would certainly be for a limited impeachment purpose. Still further, the fact cannot be ignored that two other participants in the offenses, Lloyd Jefferson and Jamie Harris, intended to provide testimony against Patterson at trial. Furthermore, the court finds that his claims that Mr. Wagner pressured him, threatened to withdraw as his attorney, and promised him a specific sentence are not credible. While Patterson complained that Mr. Wagner did not see him timely after the plea regarding the sentencing, that issue does not bear on the plea.

(*Id*. at 16).

{¶ 17} Based on our review of the record, we cannot say the trial court's lengthy and meticulous ruling on Patterson's plea-withdrawal request fails to reflect the exercise of sound, reasonable, and legal decision-making. To the contrary, the trial court thoroughly addressed each of the reasons Patterson gave for wanting to withdraw his plea and found no reasonable and legitimate basis for his request. The record supports that determination, and we see no abuse of discretion. The first assignment of error is overruled.

**{¶ 18}** In his second assignment of error, Patterson contends ineffective assistance of counsel rendered his guilty plea unknowing, unintelligent, and involuntary. His entire argument is as follows:

> Here, there was discord between counsel and Mr. Patterson after Mr. Patterson had filed a pro se motion for discovery. According to Mr. Patterson, his counsel indicated an inclination to withdraw after becoming upset with Mr. Patterson over the filing. Before the plea counsel also indicated a breakdown in communication was present. Despite the discord, trial counsel encouraged Mr. Patterson to enter a plea. Mr. Patterson contends he was told the Easterling affidavits were "very suspect" and of questionable value. The Easterling affidavits not only could have provided a sound basis to file a potentially meritorious motion to suppress, but most importantly, could have provided reasonable doubt in a case grounded on eyewitness testimony. Due to the advice that the affidavits were useless, Mr. Patterson panicked and pled guilty. This advice was deficient and prejudiced Mr. Patterson.

(Appellant's brief at 12) (Citations omitted).

**{¶ 19}** A claim of ineffective assistance of trial counsel requires both a showing that trial counsel's representation fell below an objective standard of reasonableness and that the defendant was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong requires a finding that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different, with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id.* at 694; see also *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶ 20}** Upon review, we are unpersuaded that any deficient representation or resulting prejudice rendered Patterson's guilty plea less than knowing, intelligent, and voluntary. The "discord" and "breakdown in communication" he references involved his pro se filing of two motions before entering his plea. (Tr. at 4-5). During the plea hearing, the trial court gave Patterson and his attorney a chance to speak privately to address that issue. (*Id*. at 5-7). After a short break in the proceedings, there was no further mention of a problem between Patterson and his attorney—much less a problem that would vitiate the knowing, intelligent, and voluntary nature of Patterson's guilty plea. The trial court proceeded to conduct a full Crim.R. 11 plea hearing. During the plea colloquy, Patterson expressed no dissatisfaction with his attorney or anything else. To the contrary, he stated that counsel had answered all of his questions, that he was satisfied with counsel's representation, and that he understood he would receive a sentence between three and nine years in prison with no agreement as to the specific term that would be imposed. (*Id*. at 16-17, 21).

**{¶ 21}** As for counsel's advice about the affidavits, we also see no deficient representation. Patterson contends his attorney gave him bad advice about the affidavits, causing him to panic and plead guilty. In our view, however, counsel's opinion that the affidavits were "very suspect" and of questionable value was reasonable. As set forth above, James and Charlene Easterling positively identified Patterson in a photo spread after the home invasion. Years later, after James Easterling was incarcerated with Patterson, the Easterlings both recanted their

identifications. According to a police officer who testified at the plea-withdrawal hearing, Charlene Easterling had expressed fear "of what may happen if she testifies." (Tr. at 86). Under these circumstances, counsel reasonably concluded that the affidavits were suspect. Counsel did not provide deficient representation by conveying this opinion to Patterson. The second assignment of error is overruled.

{¶ 22} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
April F. Campbell
Lucas W. Wilder
Hon. Mary K. Huffman