[Cite as *State v. Sain*, 2020-Ohio-5542.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28720 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-388 |
| | : | |
| LARRY SAIN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

KYLE J. LENNEN, Atty. Reg. No. 0085726, 120 West Second Street, Suite 820, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Larry Sain was convicted in the Montgomery County Court of Common Pleas of murder (with a firearm specification) and tampering with evidence, after the trial court overruled his motion to withdraw his guilty pleas. Sain appeals from the trial court's judgment. Sain filed a timely notice of appeal.

{¶ 2} The incident which formed the basis for Sain's conviction occurred on September 13, 2018, when 17-year-old Sain drove two of his friends, J.T. and A.H., to purchase marijuana from the victim, Jayren Graham, at the hotel in Dayton where Graham was employed.[1] After meeting in the parking lot of the hotel and purchasing the marijuana, Sain, J.T., and A.H. left and drove to another friend's residence. Graham remained at the hotel.

{¶ 3} Upon arriving at their friend's residence, Sain realized that Graham had accidentally left his cellphone in Sain's vehicle. J.T. and A.H. contacted Graham and informed him that he had left his cellphone in Sain's car. Graham informed them that if they brought his phone back to him, he would give them some marijuana for free. Although he had been drinking alcohol, Sain agreed to drive back to the hotel. When Sain returned to the hotel, Graham got into the backseat of Sain's vehicle, and a struggle ensued between Sain and Graham.

{¶ 4} Sain testified that at the motion to withdraw hearing that he kept a loaded handgun in his vehicle between the driver's seat and the middle console. Tr. 39, 45. Sain testified that, after getting into the backseat, Graham reached for Sain's gun, and the two began struggling over the gun in the backseat of the vehicle. After J.T., who was sitting

---

[1] J.T. and A.H. were juveniles at the time of the offenses. Therefore, we will refer to them by only their initials.

in the backseat, opened the door and got out, Sain and Graham both fell out of the vehicle though the open door while fighting over control of the gun. Sain testified that once he gained control of the gun, he pulled the trigger and the gun fired, killing Graham.

{¶ 5} J.T. initially supported Sain's version in her written statement to the police. However, at a probable cause hearing held in the juvenile court before the case was bound over to the general division of the common pleas court, J.T. and A.H. testified that Sain kept his gun in the console/map area of his driver's side door. J.T. and A.H. both testified that Sain got into the backseat with Graham, pointed the gun at Graham, and demanded money and/or drugs from him; only after Sain attempted to rob Graham at gunpoint did the two individuals begin to struggle for the weapon. At that point, they fell out of the vehicle onto the ground, and Sain shot and killed Graham in the parking lot of the hotel. After the shooting, Sain and J.T. got back in the vehicle with A.H., who had never moved from the front passenger seat where she was sitting during the incident, and they drove back to the friend's house. Sain testified that he threw his gun into a lake on the way back to the friend's house in order to dispose of it. The day after the shooting, Sain informed detectives that he was at a friend's house watching movies when the shooting occurred.

{¶ 6} The record establishes that on January 31, 2019, Sain's case was transferred from the Montgomery County Juvenile Court to the Montgomery County Court of Common Pleas, General Division, pursuant to a mandatory bindover proceeding. On February 21, 2019, Sain was indicted for the following offenses: four counts of murder (proximate cause), in violation of R.C. 2903.02(B), all unclassified felonies; one count of aggravated robbery (deadly weapon), in violation of R.C. 29011.01(A)(1), a felony of the

first degree; one count of aggravated robbery (serious harm); in violation of R.C. 2911.01(A)(3), a felony of the first degree; one count of felonious assault (serious harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree; one count of felonious assault (deadly weapon), in violation 2903.11(A)(2), a felony of the second degree; one count of carrying a concealed weapon (loaded/ready at hand), in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; one count of improper handling of a firearm in a motor vehicle (loaded/no license), in violation of R.C. 2923.16(B), a felony of the fourth degree; and two counts of tampering with evidence (alter/destroy), in violation of R.C. 2921.12(A)(1), both felonies of the third degree.   With the exception of the last four counts involving weapons and tampering with evidence offenses, all of the counts were accompanied by a mandatory three-year firearm specification.   At his arraignment on February 26, 2019, Sain pled not guilty to the charges contained in the indictment.

{¶ 7} On March 18, 2019, Sain filed motion to suppress any statements he made to police after being arrested and taken into custody.   After a suppression hearing on May 17, 2019, the trial court overruled Sain's motion to suppress in a decision issued on June 25, 2019.   Thereafter, a trial date was scheduled for September 3, 2019.   However, on August 30, 2019, Sain pled guilty to one count of murder with a mandatory three-year firearm specification and one count of tampering with evidence.   The other counts and specifications were dismissed.   Sentencing was scheduled for September 11, 2019, and the trial court requested a presentence investigation report (PSI).

{¶ 8} At the opening of his sentencing hearing, defense counsel informed the trial court that Sain wanted to withdraw his guilty pleas.   Sain informed the trial court that he felt that he was forced into pleading guilty, that his mother had been telling him to plead

guilty, and that he felt like he did not want to plead guilty. Accordingly, the trial court dismissed Sain's first attorney, appointed new counsel, and scheduled a hearing on Sain's motion to withdraw his guilty pleas on December 11, 2019. Sain's new counsel filed a motion to withdraw his guilty pleas on September 24, 2019, and then an amended motion on November 30, 2019. A hearing was held on Sain's motion to withdraw his guilty pleas on December 11, 2019, as scheduled.

{¶ 9} On February, 11, 2020, the trial court overruled Sain's motion to withdraw his pleas. On the following day, February 12, 2020, the trial court sentenced Sain to the original agreed upon aggregate sentence of 18 years to life in prison.

{¶ 10} It is from this judgment that Sain now appeals.

{¶ 11} Sain's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S AMENDED MOTION TO WITHDRAW PLEAS IN THAT HIS REQUEST WAS MADE PRIOR TO SENTENCING AND DEFENDANT PROVIDED SUFFICIENT EVIDENCE THAT HIS REQUEST WAS BEING MADE FOR FAR MORE THAN A CHANGE OF HEART.

{¶ 12} Sain contends that the trial court erred when it overruled his motion to withdraw his guilty pleas.

{¶ 13} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under Crim.R. 32.1, a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie,* 62 Ohio St.3d

521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute right to withdraw his plea, even if the motion is made prior to sentencing." *Id.*; *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 18.

{¶ 14} In reviewing a trial court's decision on a defendant's presentence motion to withdraw his or her plea, we apply the following nine factors: (1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea. *E.g., State v. Becraft*, 2017-Ohio-1464, 89 N.E.3d 218, ¶ 53 (2d Dist.); *State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 29.

{¶ 15} "In considering these factors, the trial court employs a balancing test; no single factor is dispositive." *Warrix* at ¶ 30, citing *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. However, "[t]he ultimate question for the trial court is whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.' " *Id.*, quoting *Xie* at 527. A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his or her plea. *State v. Maddickes*, 2d Dist. Clark No. 2013-CA-7, 2013-Ohio-4510, ¶ 15. However, in considering whether to allow withdrawal of the plea, it is not simply sufficient for the trial court to find that the Crim.R. 11 colloquy satisfied the requirements of that rule and the

United States and Ohio Constitutions; if it were, even a presentence plea could never be withdrawn. *Id.*

{¶ 16} Relevant to the instant case, in *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, we stated the following:

> When a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise. *State v. Wallen*, Montgomery App. No. 21688, 2007-Ohio-2129, ¶ 22. We also have recognized, however, that this reasoning does not apply to agreed sentences. "Where a sentence is agreed to as part of a plea bargain, and the trial court has indicated that it is joining in the agreement, there has been no 'unpleasant surprise' to the defendant after 'testing the sentencing waters,' which is the rationale for the stricter standard for a post-sentence motion to withdraw a plea." *Id.* Therefore, when a defendant files a pre-sentence motion to vacate a plea entered as part of a plea deal with an agreed sentence, the motion still should be treated as a pre-sentence motion and judged under the more lenient standard. *Id.*; *see, also, State v. Williamson*, Montgomery App. No. 21965, 2008-Ohio-4727, ¶ 11. On the other hand, *the fact that the defendant knew what the ultimate sentence would be may be a factor that the trial court could consider to determine whether the defendant's request to withdraw is*

*simply a change of heart.*

(Emphasis added.) *Id.* at ¶ 8.

{¶ 17} It is within the sound discretion of the trial court to grant or deny a motion to withdraw a plea. *Xie* at 526. We will not reverse a trial court's decision to deny a motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id.* at 527, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Hence, we will not usually find an "abuse of discretion in denying a pre-sentence motion to withdraw a guilty plea" in a case in which "(1) the [defendant] is represented by highly competent counsel, (2) the [defendant is] afforded a full hearing, pursuant to Crim.R. 11, before entering the plea, (3) * * * the [defendant] is given a complete and impartial hearing on the motion, and (4) the record reveals that the trial court gave full and fair consideration to the [defendant's] request." *State v. Donaldson*, 2d Dist. Greene No. 06-CA-110, 2007-Ohio-5756, ¶ 7, citing *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980).

### Sain's Attorney

{¶ 18} The record establishes that Sain was represented by highly competent counsel during the course of the proceedings leading up to his motion to withdraw his guilty pleas. Specifically, the record establishes that Sain hired Attorney L. Patrick Mulligan to represent him immediately after his arrest. Attorney Mulligan testified that had been a practicing attorney in the State of Ohio for over 35 years and had significant criminal law experience. Mulligan testified that he had represented defendants, conservatively, in approximately 25 to 35 murder cases in his career, including a death penalty case. In addition to Ohio, Mulligan is licensed to practice law in Kentucky and the federal courts.

**{¶ 19}** Sain testified that Mulligan never provided him with a copy of the discovery in his case. Rather, Sain testified that he was only able to look over the discovery packet one time with Mulligan. Sain testified that while his case was still pending in Juvenile Court, he and Mulligan discussed his case, as well as Sain's version of the events. Sain also testified that Mulligan informed him that he had a "good case" but failed to discuss any possible defenses to the charges.

**{¶ 20}** Conversely, Mulligan testified that, although he "always" provided the discovery packet to his clients, the Montgomery County Juvenile Court judge had a policy which prohibited any juveniles from receiving their discovery packets while detained in juvenile detention. Mulligan testified that he objected to the juvenile court's policy in that regard and contacted the court in an effort to provide Sain with the discovery packet but was rebuffed by the court. However, Mulligan testified that once Sain was transferred to the Montgomery County Jail after his bindover, he was provided with his complete discovery packet, including all pertinent evidence except criminal histories, which defendants are prohibited from having.

**{¶ 21}** Additionally, Mulligan testified that he and Sain actively discussed self-defense during their meetings; he and Sain reviewed the elements of self-defense as they applied to the underlying charges. Mulligan also explained to Sain that if the State was able to prove that he robbed Graham, then self-defense "goes out the window." Tr. 92-93. Mulligan also testified that he discussed jury nullification with Sain. Lastly, we note that Mulligan was able to negotiate a favorable plea deal for Sain, in which the State agreed to dismiss several felony counts and their accompanying firearm specifications for an agreed mandatory minimum sentence of 18-years to life in prison. Sain testified

that Mulligan informed him that if he went to trial and was convicted on all counts, he would potentially face approximately 38 years to life in prison.

{¶ 22} In our view, the record supports a finding that Sain was represented by competent and capable counsel, and this factor weighs against a finding that the trial court erred when it overruled Sain's motion to withdraw his guilty pleas.

**Sain's Crim.R. 11 Plea Hearing & Motion to Withdraw Hearing**

{¶ 23} Sain does not contend that he was not provided a full Crim.R.11 plea hearing. Rather, he argues that his guilty pleas were improperly induced by his attorney, who incorrectly informed him that he would never be placed on parole and that he would be released after serving 17 years in prison. Therefore, Sain asserts that his pleas were involuntary and he should have been allowed to withdraw them. We note that Sain did not raise this argument until after he made his initial oral motion to withdraw his guilty pleas at his original sentencing. Sain also argues that he was on prescribed medication for anxiety at the time he entered his pleas, but the trial court failed to inquire about any medications he was taking at the plea hearing.

{¶ 24} The record establishes that the trial court complied with the requirements of Crim.R. 11. The trial court reviewed the maximum possible prison sentences, financial obligations, post-release control sanctions, and informed Sain that he would not be receiving community control sanctions as a result of his pleas. The trial court advised Sain that the murder count and the firearm specification were mandatory consecutive sentences. When the trial court inquired if Sain had any questions or concerns regarding any of the material they had reviewed, he did not mention any of the issues he raised at the hearing on his motion to withdraw his guilty pleas. Significantly, when the trial court

asked Sain if he was under the influence of any drugs or alcohol, he stated that he was not, making no mention of his anti-anxiety medication.

{¶ 25} Additionally, the trial court advised Sain of the constitutional rights he was waiving as a result of his guilty pleas, including his right to a jury trial, that the State must prove his guilt beyond a reasonable doubt, his right to confront witnesses, his right to compulsory process, and his right not to testify. The record establishes that Sain indicated to the trial court that he understood all of his rights and was willing to give up those rights by pleading guilty.

{¶ 26} As noted by the trial court in its decision overruling Sain's motion to withdraw his guilty pleas, the record also establishes that Sain responded appropriately to the trial court's inquiries and never indicated that he did not understand the implications of his guilty pleas or that any promises had been made to him to induce his pleas. Therefore, in our view, the record establishes that the trial court complied with all of the requirements of Crim.R. 11 and that Sain's pleas were entered knowingly, intelligently, and voluntarily.

{¶ 27} As previously stated, at his original sentencing hearing, Sain indicated that he felt he was being forced to pleading guilty, that his mother was telling him to do it, and that he felt that he did not want to enter a plea. At the motion to withdraw hearing, Sain alleged that he wanted to withdraw his pleas because Attorney Mulligan promised him that he would be eligible for release from prison after 17 years in prison, and therefore his pleas were not knowing, intelligent, and voluntary. Sain also stated that he believed he had a complete defense to the charges based upon self-defense. Sain admitted that Mulligan did not tell him that it was his *only* option to enter a plea, but that he (Sain) "felt

as if it [was] his only option." Tr. 63. Sain also testified that his mother "forced" him to enter a plea because she told him that she thought it was in his best interest. A review of the entire hearing and the testimony outlined above, viewed in context, reveals that Sain agreed to accept the plea deal because he was aware that he faced a greater penalty if he went to trial. Sain's various statements that he felt forced to sign the plea agreement were nothing more than acknowledgements that he was choosing what he believed to be the better of two possible negative outcomes he faced. When a defendant is "faced with the stark reality of either pleading guilty pursuant to the plea bargain offered by the State, or going to trial," the fact that he has been "openly presented with unpleasant alternatives" does not render his guilty plea involuntary. *State v. Shannon*, 11th Dist. Trumbull No. 2017-T-0012, 2017-Ohio-9344, ¶ 22, citing *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

{¶ 28} Notably, Sain's written plea forms indicated that he would serve a definite prison term of 18-years to life. The State and trial court clearly stated on the record that Sain's sentence would be 18-years to life. Significantly, the State introduced a recording of a phone call between Sain and his mother while he was in jail awaiting trial. On the recording, Sain can be heard telling his mother that he was going to take the guilty pleas and that "he would get out eventually." Furthermore, when discussing the potential life sentence (life tail) attached to his conviction for murder, Sain informed his mother that there was "no guarantee" that he was ever going to get out of prison.

{¶ 29} Mulligan testified that he reviewed the plea forms with Sain, including that the murder charge had a life tail, and he believed that Sain understood the nature of the sentence. Mulligan also testified that he explained to Sain that a life tail meant that it

would be the decision of the parole authority regarding when he would be released from prison. However, Mulligan testified that he informed Sain that he had a good chance of being released at his first parole eligibility hearing based upon his age, limited juvenile record, and the facts in the case. Contrary to Sain's allegations, the record establishes that Mulligan did not promise Sain that he would be released after serving 17 years in prison, but rather that he could be released.[2] Mulligan also wrote a letter on behalf of Sain as part of the PSI that was "specifically done to be in the file for the Parole Authority to look at."

{¶ 30} The record establishes that, after a full hearing on Sain's motion to withdraw his guilty pleas, the trial court found Mulligan's testimony to be credible. The evidence adduced at the hearing established that Sain understood the nature of the charges, the possible defenses or lack thereof, and the consequences of a sentence of 18 years to life. Mulligan provided Sain with correct legal advice, informed him of the worst-case scenarios, and gave him professional recommendations on how to proceed.

### Timing of the Motion

{¶ 31} As previously stated, Sain argues that he made his presentence plea-withdrawal motion within a reasonable time because he made it before sentencing, as required by Crim.R. 32.1. In our view, this merely establishes that Sain made the motion within a permissible time. The trial court still was entitled to consider the fact that Sain made the motion weeks after entering his pleas and literally the day of sentencing. *See State v. Greenlee*, 2d Dist. Montgomery Nos. 28467 & 28468, 2020-Ohio-2957, ¶ 17.

---

[2] Sain had jail-time credit of more than a year at the time of the motion to withdraw hearing, which would have made him eligible for parole after approximately 17 years rather than 18 years.

**Self-Defense Claim**

{¶ 32} , Sain admitted that he shot and killed Graham on September 13, 2018. At his motion to withdraw hearing, Sain claimed that he believed that he could claim self-defense and that he could have successfully raised that defense at trial. Sain argues that Mulligan never discussed any defense with him, including self-defense.

{¶ 33} Mulligan testified that he and Sain actively discussed self-defense during their meetings. Mulligan testified that he and Sain reviewed the elements of self-defense as they applied to the underlying charges. Mulligan also explained to Sain that if the State were able to prove that he robbed Graham, then self-defense "goes out the window." Tr. 92-93. Although he discussed potential defenses with Sain, including self-defense, Mulligan testified that he noted that the potential defenses were weak. Tr. 101.

{¶ 34} The elements of a valid claim of self-defense are as follows: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. Furthermore, the elements of self-defense are cumulative, meaning that all of the elements must be present to establish to self-defense. *See State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶ 35} The basis for Sain's self-defense claim was his own testimony at the motion to withdraw hearing that he kept a loaded handgun in his vehicle located between the

driver's seat and the middle console. Tr. 39, 45. Sain testified that after getting into the backseat, Graham reached for Sain's gun, and the two began struggling over the gun in the backseat of the vehicle. After J.T., who was sitting in the backseat, opened the door and got out, Sain and Graham both fell out of the vehicle though the open door, still fighting over control of the gun. Sain testified that once he gained control of the gun, he pulled the trigger, and the gun fired, killing Graham.

{¶ 36} As previously stated, J.T. initially supported Sain's version of events in her written statement to police immediately after the shooting. However, after writing the witness statement, J.T. reversed her account of events and admitted that Sain robbed Graham, the two men then struggled for the control of the gun, and Sain shot Graham in the parking lot of the hotel. Additionally, A.H. never wavered in her account of the events, and was "clear from the very beginning" that Sain robbed and then shot Graham. Tr. 91.

{¶ 37} Mulligan testified that he showed Sain J.T. and A.H.'s statements prior to the juvenile bindover hearing. Accordingly, Sain was aware of the statements early in his case; they were not new information that he learned after his plea. Where a defendant is aware of the factual basis for an alleged defense at the time of the plea, he or she is "presumed to have taken this defense into consideration" when deciding to enter a plea and to have "conclud[ed] that the possibility of succeeding with that defense was not worth the risk of a greater sentence if the defense would fail, resulting in a conviction and a greater sentence." *State v. Warrix*, 2d Dist. Montgomery 26556, 2015-Ohio-5390, ¶ 36.

{¶ 38} In light of the foregoing, we find that the record supports the trial court's finding that Sain failed to set forth any evidence that would demonstrate a complete

defense to the charges against him or that he was unaware of the evidence upon which he could rely in support of that potential defense.

{¶ 39} "[A] change of heart, without some additional justification, is not a sufficient basis for the withdrawal of a guilty or no contest plea." *State v. Deloach*, 2d Dist. Montgomery No. 21422, 2006-Ohio-6303, ¶ 17; see also *State v. Delpinal*, 2d Dist. Clark Nos. 2015-CA-97, 2015-CA-98, 2016-Ohio-5646, ¶ 9 ("[a] 'change of heart' is not enough"). "[W]here the only reason given by the defendant is a change of heart," "[a] trial court that denies a pre-sentence motion to withdraw a guilty plea does not abuse its discretion." *State v. Spurgeon*, 2d Dist. Greene No. 2014-CA-12, 2014-Ohio-4849, ¶ 18.

{¶ 40} On these facts, the trial court reasonably found that Sain did not have a sufficient reason to withdraw his plea but merely had a change of heart. Therefore, we cannot say that the trial court abused its discretion by denying Sain's motion to withdraw his guilty pleas.

{¶ 41} Sain's assignment of error is overruled.

{¶ 42} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .


FROELICH, J. and HALL, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Kyle J. Lennen
Hon. Barbara P. Gorman