[Cite as *State v. Warrix*, 2015-Ohio-5390.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26556 |
| | : | |
| v. | : | T.C. NO. 13CR4069 |
| | : | |
| NANCY L. WARRIX | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 23rd day of December, 2015.

. . . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, Talbott Tower, Suite 1210, 131 North Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

        {¶ 1} Defendant-appellant Nancy L. Warrix appeals from her conviction and

sentence for Theft from an Elderly or Disabled Person, in violation of R.C. 2913.02(A)(2),

claiming that the trial court erred in denying her presentence motion to withdraw her guilty plea. We conclude that the trial court did not abuse its discretion in overruling the motion. Therefore, the trial court's judgment is Affirmed.

## I. Background and Procedural History

{¶ 2} In January 2014, Warrix, then age 62, was indicted for Theft from an Elderly or Disabled Person, in an amount of $37,500 or more, but less than $150,000, a felony of the second degree. The indictment alleged that between June 13, 2007, and August 28, 2012, Warrix had taken money from her mother, Frances Bailey.

{¶ 3} While the case was pending, Warrix's counsel, Frank Schiavone IV, filed numerous motions. On February 4, 2014, he filed a demand for a bill of particulars and a request for discovery. Warrix's counsel acknowledged receipt of the State's discovery packet on February 26, 2014. In June 2014, counsel filed a motion to disclose grand jury testimony, a motion in limine to prohibit victim-impact evidence, a motion to exclude evidence of other acts, and a motion to require the State to divulge considerations provided to prosecution witnesses in exchange for their aid/testimony.

{¶ 4} Throughout the case, Schiavone engaged in plea negotiations with the State. At the final pretrial conference, held on July 8, 2014, the parties informed the trial court that they had reached a plea agreement, pursuant to which Warrix would plead guilty to the charged offense and be sentenced to the minimum term of two years in prison. Warrix would also pay restitution, which was estimated to be approximately $120,000, but the exact amount would be determined at sentencing. The parties discussed that the two-year term was not a mandatory sentence, but that Warrix should expect to serve the

entire sentence and not to be granted judicial release. The trial court specifically informed Warrix that it was unlikely that it would grant a motion for judicial release, given that she was receiving the minimum sentence. Warrix indicated that she understood.

{¶ 5} Following the informal discussions, the trial court conducted a plea hearing, during which Warrix formally entered a guilty plea. The trial court questioned Warrix about her education, whether she was able to read and understand the plea agreement, whether she was under the influence of drugs or alcohol, and whether she had a mental or physical condition or was taking any medication that would affect her ability to understand the proceedings. Warrix's responses indicated that she was able to proceed with the plea hearing and that she understood what was occurring. In response to other questions, Warrix denied that she had been threatened or forced to enter a plea, that she had been promised anything in exchange for the plea (other than the agreed sentence), and that she had been promised judicial release.

{¶ 6} The prosecutor read the charge to which Warrix was pleading guilty. The court informed Warrix of the potential prison term for that offense (two to eight years), that the parties agreed that she would receive the minimum term of two years, and that she faced a potential fine of up to $15,000. The trial court also informed Warrix that she would not be considered for community control sanctions, that she would be required to serve three years of post-release control following her release from prison, and informed her of the consequences if she violated post-release control. Warrix stated that she understood each of these. Warrix further stated that she understood that a guilty plea was a complete admission of guilt. Finally, the trial court reviewed the constitutional rights that Warrix was waiving by entering a plea. Warrix stated that she understood that

she was giving up these rights by entering a plea.

{¶ 7} Warrix acknowledged that she had signed a plea form, indicating that she was pleading guilty to the charged offense, and she told the court that she was pleading guilty. The trial court found that Warrix entered her plea knowingly, intelligently, and voluntarily. The trial court ordered a presentence investigation. Sentencing was scheduled for August 13, 2014.

{¶ 8} On July 30, 2014, prior to sentencing, Warrix filed a motion to withdraw her guilty plea. The motion, filed by Attorney Schiavone, did not state the reasons for Warrix's wanting to withdraw her plea.

{¶ 9} On September 25, 2014, the trial court conducted a hearing on the motion. Warrix, represented by new counsel, testified on her own behalf. The State presented the testimony of Warrix's original counsel, Frank Schiavone IV.

{¶ 10} During her testimony, Warrix discussed the attorney-client relationship between her and Schiavone, and she repeatedly asserted that she was not guilty of the charge against her. Warrix testified that Schiavone and his father, who is also an attorney, were supposed to represent her in probate court, but she testified twice in probate court without their representation. She indicated that the Schiavones took on her criminal case after her indictment, but they failed to adequately communicate with her. She stated that they did not respond when she was jailed for six days after her arrest. She complained that they did not return her phone calls and failed to provide her with the discovery packet. Warrix stated that she received a CD of the discovery in July 2014, but the disk was "blank." She did not see the discovery until "just this last court date."

{¶ 11} Warrix asserted that she was pressured by Schiavone to enter a guilty plea. She stated that they talked with her like prosecutors and told her that she "wasn't going to get out of it." Warrix testified that Schiavone told her that she would be sentenced to eight years in prison and would not get probation. Warrix stated that her attorneys had talked about a plea deal a couple times before July 7; they had thought it was "a good thing" and that the prosecutor would "eat me alive if I went to trial." Warrix stated that she repeatedly and consistently told Schiavone that she was not guilty, and he pressured her into accepting the plea deal. Warrix indicated that, at the plea hearing, she felt pressured to answer questions that were against her interests.

{¶ 12} On cross-examination, Warrix acknowledged having a prior conviction in 2008 for receiving stolen property, and that she had been the defendant in a civil case. Warrix had filed a pro se response to the civil complaint, asserting that the plaintiff's allegations were false. In the 2008 criminal case, Warrix had originally been appointed a public defender, but she fired him and hired her own attorney. Based on her attorney's advice, Warrix pled no contest to three counts of receiving stolen property; she stated that her attorney had not forced her to enter a plea.

{¶ 13} Warrix also testified about the bank accounts that formed the basis for the theft charge against her. Warrix testified that she and her mother, Bailey, opened a checking account and a money market savings account at National City Bank on June 13, 2007. Both accounts were joint and survivorship accounts. The next day, June 14, 2007, Bailey transferred funds from Abbey Credit Union into the National City Bank accounts: $122,974.47 into the money market account, and $23,118.05 into the

checking account. On June 28, 2007, Bailey executed a durable power of attorney, making Warrix her attorney-in-fact. Over time, Bailey placed additional funds into the accounts; Warrix did not contribute any money.

{¶ 14} It is undisputed that Warrix used $136,417.77 from the National City Bank accounts for her personal benefit. Warrix testified that she did not believe that she stole money from her mother. She testified that the "checking was my mother's and the money market was mine." (Tr. at 83.) Warrix stated, "She [Bailey] gave it to me." (*Id.*) Warrix testified that she had told Schiavone that her mother had given her the money, but Schiavone did not listen. In discussing that Bailey had made Warrix her attorney in fact, Warrix volunteered that Bailey "also wrote a letter out that [Schiavone's] got that stated that everything that she had would be given to me. It was her handwriting on it. * * * Has to do with the inside of the house." (Tr. at 81.) Defense counsel informed the court at the hearing that his defense was that the money was co-owned by Warrix and Bailey, not that there was a gift from Bailey to Warrix.

{¶ 15} Schiavone testified at the hearing about his representation of, and interactions with, Warrix. Schiavone stated that he and his father have a legal office and they collaborate on all cases. Warrix had been referred to the office by her significant other. Warrix had informed Schiavone that there were probate matters pending, for which she had already provided testimony, and she asked that he meet with Detective Thomas Shaw. Schiavone met with Shaw at Shaw's office, during which they reviewed voluminous records of bank account information, and Shaw explained potential actions he might take against Warrix.

{¶ 16} After Warrix was indicted, Schiavone explained to Warrix "what the potential

consequences there could be and the process and what needed to be done."   At the first meeting, Schiavone did not have the State's discovery, but he had an understanding of what the discovery would show.   He stated that he was waiting to see specific checks and amounts so that he could formulate a defense.

{¶ 17} Schiavone testified that Warrix did not tell him in early February 2014 that her mother had gifted the money to her; at that time, Warrix indicated to him that the money had been used to take care of her mother and her mother's living expenses. Schiavone stated:

> At our initial meeting, there was much discussion as far as where the money was used.   As far as any documents, at our first meeting, no documents were given to me at any time.   And any documents concerning a letter or any indication for her mother that this was a gift, I did not receive anything like that at anytime.

(Tr. at 112.)   Schiavone specifically stated that Warrix did not tell him in early February that she had received the money from her mother as a gift.   (Tr. at 113.)

{¶ 18} Schiavone testified that Warrix's justification changed over time.   At one point, Warrix had said that the money came from a personal injury case and, at another point, that it was repayment for money loaned to her father.   The defense then became "it was a gift from my mother."   Schiavone indicated that he discussed this possible defense with Warrix.   Schiavone testified that Warrix eventually told him to figure out for himself what her defense would be.   When asked whether he had received from Warrix a letter written by Bailey indicating that Bailey had given money to Warrix, Schiavone responded:

> I had asked throughout this process for Nancy [Warrix] to give me any documentation that would help show where the money went. I was given one checkbook with receipts that were also provided in discovery, so those did match. At our final meeting at my office with my father, a letter was presented by her at that time appearing to be – and it was a handwritten letter with her mother's signature at the bottom. I cannot remember what the contents of that letter to be.

(Tr. at 140.) Schiavone stated that he returned the letter to Warrix after she told him that she no longer wanted his services.

{¶ 19} Schiavone testified that he received discovery from the State in the form of a CD with approximately 1,600 pages of documents. Schiavone reviewed those documents electronically and on paper several times. Schiavone met with Warrix to review specific items of discovery and to get her version of the events. Warrix did not request a copy of the discovery at that time. Once Warrix did request the discovery, Schiavone provided her a copy of the CD that he had received from the State. After Warrix asserted that the disk was blank, Schiavone tested the CD on other computers to verify that it contained the discovery, and then he had the materials printed for Warrix by a local printing service. Schiavone provided the CD and the documents to Warrix in July 2014.

{¶ 20} Schiavone testified that he discussed a potential plea with the State beginning early in the case. At that time, the State offered six years. After the third pretrial conference, the State offered a 24-month, non-mandatory sentence. Schiavone

testified that he spoke with Warrix for roughly one and one-half to two hours in the hallway of the courthouse, and Warrix declined the plea.

{¶ 21} According to Schiavone, between the third and fourth (final) pretrial conference, he and his father met with Warrix, discussed the discovery, asked Warrix about specific accounts and transactions, and conducted a mock cross-examination. At the final pretrial conference, the State offered the same plea, and Warrix accepted it. Schiavone reviewed the plea form with Warrix prior to the plea hearing. Schiavone testified that Warrix had asserted that she was not guilty up until that time, but she was not pressured by him to accept the plea. Schiavone stated that he had told Warrix that he was prepared to go to trial,[1] but he believed that it was in Warrix's best interest to accept the plea.

{¶ 22} Numerous exhibits were offered into evidence at the hearing on the motion to withdraw Warrix's plea. Those exhibits included, among other things, copies of bank signature cards, power of attorney documents, court documents concerning Warrix's prior criminal and civil cases, and copies of checks and bank records related to the theft allegations against Warrix. The handwritten letter that Warrix purported would demonstrate Bailey's donative intent was not presented or offered into evidence at the hearing.

{¶ 23} After post-hearing briefing, the trial court overruled Warrix's motion to withdraw her plea. The trial court specifically found Schiavone's testimony to be credible. The court concluded that Schiavone had provided competent representation,

---

[1] In fact, Schiavone testified that he gave Warrix a form to sign reflecting her intention to reject the plea offer and take the case to trial. She did not sign this form before pleading guilty.

that Warrix was provided a complete and comprehensive Crim.R. 11 hearing, and that the court had given full and fair consideration to her motion. The court rejected Warrix's contention that the joint and survivorship nature of the bank accounts provided a meritorious defense to the theft charge. The court further stated:

Ms. Warrix, based upon that which she told Mr. Schiavonne [sic], realized that if the money had been gifted to her this would constitute a defense. Ms. Warrix, despite this and after a complete and careful Rule 11 hearing, entered a plea of guilty wherein she stated she understood that a guilty plea was a complete admission to the theft indictment. Ms. Warrix, thereafter, did not assert that a gift had occurred until she made this assertion during her cross-examination [at the hearing on the motion to withdraw the plea]. Mr. Monta [current counsel], as noted, attempted to prevent Ms. Warrix's gift testimony because he recognized that his ownership argument was not compatible with Ms. Warrix's gift assertion. When a claim of innocence is asserted in support of a motion to withdraw a guilty plea, such a claim must be given careful consideration. In this case, after such careful consideration, it is concluded that Ms. Warrix's gift assertion is simply a component of her change of heart concerning her plea. This conclusion is based upon two considerations. First, Ms. Warrix informed Mr. Schiavonne [sic] that the funds were a gift, but after consulting with Mr. Schiavonne [sic] she, nonetheless, entered a guilty plea. Second, Ms. Warrix, in her attempt to withdraw her plea, did not assert the funds were a gift until she surprised Mr. Monta by this gratuitous cross-

examination assertion. It is concluded, given the timing and context of Ms. Warrix' s gift claim, that the gift assertion is a manifestation of Ms. Warrix['s] change of heart regarding her guilty plea.

{¶ 24} Although Warrix's motion was timely, and the State would not be prejudiced by the withdrawal of her plea, the trial court found that these factors did not "overcome the conclusion that Ms. Warrix's motion constitutes a change of heart."

{¶ 25} Warrix appeals, contending that the trial court erred in denying her motion to withdraw her guilty plea.

## II. Trial Court Did Not Abuse its Discretion
## by Overruling Defendant's Motion to Withdraw her Plea

{¶ 26} Warrix's sole assignment of error is as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HER GUILTY PLEA.

{¶ 27} Crim.R. 32.1 governs motions to withdraw a plea. It provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 28} A presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Nevertheless, even under the presentence standard, the right to withdraw a plea is not absolute, and a trial court retains discretion to overrule a presentence motion to withdraw a plea. *Id.* The presentence standard, however, is more lenient than the "manifest

injustice" standard, which is applicable to post-sentence motions. *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10. We review the trial court's ruling on a presentence motion to withdraw a plea for an abuse of discretion. *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 10, citing *State v. DeJesus*, 2d Dist. Greene No. 2015-CA-4, 2015-Ohio-4111, ¶ 16.

{¶ 29} In evaluating whether a trial court has abused its discretion in overruling a motion to withdraw a plea, we have reviewed the following nine factors set forth in *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995):

> (1) whether the accused is represented by highly competent counsel,
> (2) whether the accused was given a full Crim.R. 11 hearing before entering
> the plea, (3) whether a full hearing was held on the motion, (4) whether the
> trial court gave full and fair consideration to the motion, (5) whether the
> motion was made within a reasonable time, (6) whether the motion sets out
> specific reasons for the withdrawal, (7) whether the accused understood the
> nature of the charges and possible penalties, (8) whether the accused was
> perhaps not guilty of or had a complete defense to the charge or charges,
> and (9) whether the state is prejudiced by withdrawal of the plea.

*Massey* at ¶ 11; *State v. Young*, 2d Dist. Greene No. 2003 CA 89, 2004-Ohio-5794, ¶ 11.

{¶ 30} In considering these factors, the trial court employs a balancing test; no single factor is dispositive. *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. The ultimate question for the trial court is whether there is a "reasonable and legitimate basis for the withdrawal of the plea." *Xie*, 62 Ohio St.3d at 527. We have repeatedly stated that a "change of heart" is an insufficient justification for

the withdrawal of a plea. *E.g., Massey* at ¶ 10; *DeJesus* at ¶ 16; *State v. Oglesby*, 2d Dist. Montgomery No. 26251, 2015-Ohio-2557, ¶ 14; *State v. Spurgeon*, 2d Dist. Greene No. 2014-CA-12, 2014-Ohio-4849.

{¶ 31} In this case, the trial court did not abuse its discretion when it overruled Warrix's motion to withdraw her plea. Schiavone's testimony, which the trial court found to be credible, established that Warrix was represented by competent counsel during the course of her case, both in terms of Schiavone's filings and preparation for trial, and his communications with Warrix. The transcript of the plea hearing reflected that Warrix received a full Crim.R. 11 hearing before entering the plea. Schiavone testified that he had discussed the charge and the possible penalties with Warrix, and Warrix acknowledged at the plea hearing that she understood the nature of the charge and the possible penalties. Warrix denied that she had been threatened or promised anything (other than the agreed sentence) to induce her plea and, by all appearances, she entered her guilty plea knowingly, intelligently, and voluntarily.

{¶ 32} After Warrix indicated to Schiavone that she wished to withdraw her plea, Schiavone filed a timely motion on her behalf. Although the motion itself did not discuss the reasons for the motion, the court provided a hearing on the motion, during which Warrix and Schiavone testified and several exhibits were offered into evidence. The trial court gave full consideration to the motion and filed a thoughtful decision on the matter.

{¶ 33} Warrix asserted at the hearing that she had a defense to the charge against her. The first defense, offered by defense counsel, was that Warrix was not guilty of theft because she co-owned the funds in the joint and survivorship accounts at National City Bank. This defense is unavailing.

"The existence of a joint and survivorship bank account raises a rebuttable presumption that co-owners of the account share equally in the ownership of the funds on deposit." *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 8 O.O.3d 198, 375 N.E.2d 804, paragraph three of the syllabus. This presumption applies in the absence of evidence to the contrary. *Id.* at paragraph four of the syllabus; *see Wright v. Bloom* (1994), 69 Ohio St.3d 596, 602–603, 635 N.E.2d 31. "A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, paragraph one of the syllabus; see Uniform Probate Code 6-103.

*Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 12.

{¶ 34} The evidence is undisputed that the National City Bank accounts were funded by money that belonged to Bailey. Warrix did not contribute any money to the National City accounts. Accordingly, Warrix could not raise a viable defense that the existence of the joint and survivorship accounts permitted her to spend the money, during Bailey's lifetime, as a co-owner.

{¶ 35} Warrix further raised at the hearing that the money in the money market account was given to her by Bailey as a gift. She testified that she told Schiavone that her mother gave the money to her, and Schiavone also stated that Warrix made this

assertion, along with several other bases for her right to spending the money. Warrix's assertion that Bailey had given the money to her as a gift constituted a possible defense to the theft charge.

**{¶ 36}** Nevertheless, at the time Warrix entered her plea, she was aware of the facts surrounding the establishment of the National City Bank accounts and whether she had been given any of the money in those accounts as a gift or otherwise. In other words, Warrix was aware of the factual basis for her gift defense when she pled guilty to Theft from an Elderly or Disabled Person, and she is presumed to have taken this defense into consideration when she decided to enter her plea, concluding that the possibility of succeeding with that defense was not worth the risk of a greater sentence if the defense would fail, resulting in a conviction and a greater sentence. The trial court did not abuse its discretion when it concluded that Warrix's subsequent decision to withdraw her plea constituted a mere change of heart regarding her plea.

**{¶ 37}** Balancing the factors relevant to a presentence motion to withdraw a plea, we conclude that the trial court did not abuse its discretion when it concluded that Warrix had a mere change of heart and, on that basis, denied her motion. As stated above, a change of heart is not a sufficient justification to withdraw a plea. Accordingly, Warrix's sole assignment of error is overruled.

### III. Conclusion

**{¶ 38}** Warrix's sole assignment of error having been overruled, the trial court's judgment is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Kirsten A. Brandt
Jeffrey T. Gramza
Hon. Michael L. Tucker