[Cite as *State v. Bradley*, 2019-Ohio-5009.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 28301 and 28302 |
| | : | |
| v. | : | Trial Court Case Nos. 2016-CR-2391 |
| | : | and 2018-CR-2076/2 |
| WALTER SHANE BRADLEY | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of December, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MATTHEW J. BARBATO, Atty. Reg. No. 0076058, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Walter Shane Bradley was convicted on his no contest pleas in the Montgomery County Court of Common Pleas of aggravated vehicular homicide, aggravated vehicular assault, and bribery. He appeals from the trial court's decision overruling his presentence motion to withdraw his no contest plea. For the reasons outlined below, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural Background

{¶ 2} On August 22, 2015, Bradley was driving a Ford pickup truck while intoxicated.[1] At the corner of East Third Street and St. Clair Street in Dayton, Bradley struck a vehicle driven by Carrie Cox. Bradley did not stop and continued to drive to the intersection of First Street and Keowee Street where he ran a red light and struck a taxi. Bradley again failed to stop and drove on toward the intersection of Monument Street and Taylor Street, where he failed to observe a stop sign. As Bradley drove through the intersection, he collided with a vehicle operated by Kristin Burton. Bradley exited his vehicle and attempted to run away. However, he was caught and detained by Joseph Cox, who had followed him from the collision with Carrie Cox.[2] Kristin Burton died at the scene of the accident. Burton's son, who was in a car seat in the back seat of her vehicle, suffered major injuries, but survived.

{¶ 3} On November 23, 2016, Bradley was indicted in Montgomery C.P. No. 2016-CR-2391 on two counts of failure to stop after an accident in violation of R.C. 4549.02(A);

---

[1] At that time, Bradley was on community control sanctions for a 2012 felonious assault conviction and he was under a license suspension.

[2] Joseph Cox was married to Carrie Cox.

one count of aggravated vehicular homicide (OVI/driving under suspension) in violation of R.C. 2903.06(A)(1)(a); one count of aggravated vehicular homicide (OVI) in violation of R.C. 2903.06(A)(1)(a); one count of aggravated vehicular homicide (reckless/driving under suspension) in violation of R.C. 2903.06(A)(2)(a); one count of aggravated vehicular homicide (reckless) in violation of R.C. 2903.06(A)(2)(a); one count of aggravated vehicular assault (OVI/driving under suspension) in violation of R.C. 2903.08(A)(1)(a); one count of aggravated vehicular assault (OVI) in violation of R.C. 2903.08(A)(1)(a); one count of vehicular assault (reckless/driving under suspension) in violation of R.C. 2903.08(A)(2)(b); one count of vehicular assault (reckless/driving under suspension) in violation of R.C. 2903.08(A)(2)(b); one count of failure to stop after an accident or collision (death) in violation of R.C. 4549.02(A) and (B); and one count of failure to stop after an accident or collision (serious physical harm) in violation of R.C. 4549.02(A) and (B).

{¶ 4} Bradley initially retained attorney Patrick Flanagan, who began conducting discovery and filing various motions. In January 2017, Bradley also retained attorney Daniel O'Brien to act as co-counsel. In March 2017, Flanagan withdrew as counsel. Thereafter, O'Brien filed a motion to suppress, which was overruled by the trial court.

{¶ 5} On May 13, 2018, Bradley made a telephone call from jail which was recorded in accordance with standard jail procedure. During that call, Bradley told a friend, identified as Ricky Knox, to offer money to Joseph Cox in order to persuade him not to appear as a witness at trial. Bradley told Knox that he had a "discovery packet" which contained numerous witness statements. Of particular note, Bradley told Knox that Cox's witness statement indicated Cox had observed Bradley driving the truck that

caused all three accidents.

{¶ 6} As a result of that telephone call, on June 21, 2018, Bradley was indicted in Montgomery C.P. No. 2018-CR-2076 on one count of bribery (corrupt witness) in violation of R.C. 2921.02(C). The cases were joined for purposes of trial. O'Brien withdrew as counsel that same month, and Michael Brush was appointed to represent Bradley.

{¶ 7} Trial was scheduled to begin on October 1, 2018. However, on September 26, 2018, Bradley entered a plea of no contest to one count of aggravated vehicular homicide, one count of aggravated vehicular assault, and one count of bribery. Pursuant to an agreement with the State, all other counts were dismissed and the parties agreed to a sentencing range of 12 to 18 years in prison. The parties also agreed that the sentencing range would include any possible sentence for the pending revocation of his community control sanctions for the 2012 felony conviction. A sentencing hearing was set for November 8, 2018.

{¶ 8} In early October 2018, the trial court received a handwritten, pro se letter from Bradley requesting to withdraw his plea. In the letter Bradley claimed that he did not understand what had happened at the plea hearing and that his attorney had "guaranteed" that he would get a 12-year sentence with two years of jail time credit. The letter was forwarded to the prosecutor and defense counsel. The trial court permitted Brush to withdraw as counsel, and on October 30, 2018, new counsel was appointed to represent Bradley. In November 2018, Bradley filed a written motion to withdraw his plea in which he claimed that counsel had been ineffective and that Bradley had not understood that the plea agreement provided for a sentencing range of 12 to 18 years. On December 5, 2018, Bradley retained private counsel who entered a notice of

substitution.   Appointed counsel was permitted to withdraw.

{¶ 9} A hearing on the motion to withdraw the plea was conducted on December 18, 2018.   Bradley testified that Brush came to jail to discuss the plea agreement with him the day before the plea.   He testified Brush told him that if he did not take the plea, he would get 30 years in prison.   Bradley testified that Brush wrote the number "12" on a piece of paper, circled it, and stated "that's what I can get you right now."   Tr. p. 15. Bradley testified that Brush told him the judge would state that the range would be "12 to 18 years," but that Bradley would only get a 12-year prison term.   Tr. p. 19.   Bradley testified that Brush did not review or discuss the plea forms with him.   Bradley also testified that he did not discuss any possible defenses with Brush and that he never received a full discovery packet from any of his attorneys.   Bradley testified that Brush had instructed him to answer "yes" to any questions by the trial court concerning the sentence.   Bradley testified that he had not been informed of a possible sentencing range of 12 to 18 years until he appeared for the plea hearing.   He testified that believed he would get a 12-year sentence, but that when he was taken back to jail after the plea, other inmates explained to him that the range meant he could get up to an 18-year sentence.

{¶ 10} Brush testified that he visited Bradley in jail at least eight times during the course of his representation, and that his associate was present for some of the visits. Brush testified that he also met with Bradley at the courthouse in conjunction with at least four court appearances.   Brush testified that he and Bradley discussed possible defenses, including Bradley's claim that he had not been driving at the time of the three accidents.   Brush also testified that he gave Bradley a full paper copy of the file and that he had watched all the videos in the file with Bradley during the jail meetings.

{¶ 11} Brush testified that, two days before the plea hearing, both he and his associate met with Bradley at the jail for a period of two hours. Brush testified that he discussed the possible sentencing range with Bradley. He testified that he wrote "12 - 18" on a piece paper and that Bradley stated he could not do an 18-year sentence. Brush testified that he explained that 18 years was a possibility, but that he circled the "12," and informed Bradley that he was going to make an argument in support of a 12-year sentence. Brush testified that he does not just say, for example, "12 to 18" when discussing a possible sentencing range. Instead, he testified that when explaining a sentencing range with a client, he, again for example, will say, "you could get 12 years, 13 years, 14 years, and [that he will] go all the way to 18." He testified that he learned to do so from a judge, and that he routinely follows this practice. Consistent with this routine, Brush testified he told Bradley that he could receive a "12, 13, 14, 15, 16, 17 or 18" year sentence and that he then repeated the sentencing range. Tr. p. 131. Brush testified that Bradley stated he understood the terms of the agreement and that Bradley authorized him to make the plea offer to the prosecutor. Brush testified that the substance of the plea forms was discussed with Bradley at that meeting.

{¶ 12} Brush testified that on the day of the plea hearing, he and his associate met Bradley in court. Brush testified that he told his associate to go over the plea forms with Bradley. Brush testified that he left the two together to go over the forms. Brush also testified that when he walked back into the courtroom, his associate informed him that Bradley did not want to enter the plea. Brush testified that he, Bradley and the associate sat in a closed room where Bradley stated that he thought he was pleading to a 12-year sentence. Brush testified that he responded by stating that Bradley knew the plea was

for a sentencing range. Brush testified that he also informed Bradley that if he did not want to enter a plea that Brush would so inform the court. Brush testified that after further discussion, Bradley decided to go ahead with the plea. Brush testified that he then discussed and reviewed the plea forms with Bradley and that he again explained the sentencing range. Brush testified that he did not make any promises to Bradley to induce him to enter the plea.

{¶ 13} Following the hearing, the trial court entered a decision overruling the motion to withdraw the plea. A sentencing hearing was conducted. The trial court sentenced Bradley to a prison term of 36 months on the conviction for bribery. The trial court also imposed an 11-year sentence for the aggravated vehicular homicide and a four-year sentence for the aggravated vehicular assault. All three sentences were ordered to run consecutively for an aggregate prison term of 18 years.

{¶ 14} Bradley appeals.

## II. Analysis

{¶ 15} Bradley asserts the following three assignments of error:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT [BRADLEY'S] REQUEST WOULD PREJUDICE THE STATE

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT FIND THAT [BRADLEY] WAS PERHAPS NOT GUILTY, NOR HAD A COMPLETE DEFENSE TO THE CHARGE OR CHARGES

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT [BRADLEY] HAD UNDERSTOOD THE POTENTIAL PENALTIES DURING THE CRIM.R. 11 HEARING AND SIMPLY HAD A "CHANGE OF

HEART" IN DECIDING TO WITHDRAW HIS PLEA.

{¶ 16} All of Bradley's assignments of error concern the propriety of the trial court's decision denying his motion to withdraw his plea. Thus, we will address all three together.

{¶ 17} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The presentence standard is more lenient than the "manifest injustice" standard, which is applicable to post-sentence motions. *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10. Generally, a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute right to withdraw his plea, even if the motion is made prior to sentencing." *Id.*; *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 7.

{¶ 18} The trial court may consider the following factors in determining whether to grant the motion:

(1) whether the accused was represented by highly competent counsel,

(2) whether the accused was given a full Crim.R. 11 hearing before entering the plea,

(3) whether a full hearing was held on the motion,

(4) whether the trial court gave full and fair consideration to the motion,

(5) whether the motion was made within a reasonable time,

(6) whether the motion sets out specific reasons for the withdrawal,

(7) whether the accused understood the nature of the charges and possible penalties,

(8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and

(9) whether the state is prejudiced by withdrawal of the plea.

*State v. Becraft*, 2017-Ohio-1464, 89 N.E.3d 218, ¶ 53 (2d Dist.), citing *State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 29, quoting *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11.

{¶ 19} In considering these factors, the trial court employs a balancing test and no single factor is dispositive. *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. After conducting a hearing on the motion, "the trial court must 'determine whether [the defendant] has a reasonable and legitimate basis' for the withdrawal, rather than '[a] mere change of heart.' " *State v. Bush*, 2d Dist. Clark No. 2018-CA-13, 2018-Ohio-5272, ¶ 10, quoting *Xie* at 527.

{¶ 20} The decision to grant or deny a motion to withdraw a plea is committed to the sound discretion of the trial court. *Xie* at 526. The term "abuse of discretion" has been defined as "an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 21} The first factor is whether appellant was represented by highly competent

counsel. The record shows that Brush was a licensed attorney in good standing with the State of Ohio. During the change of plea hearing, Brush testified he had been practicing law for 12 years with four of those years as a Montgomery County Prosecutor, four in a civil defense firm, and four in his own practice. Brush testified he had handled numerous felony cases and that approximately 75% of his practice was devoted to criminal defense. Further, Brush was able to negotiate a plea deal which, under the circumstances, was fairly favorable. Under the terms of the plea agreement, the State agreed to dismiss eight other felony charges as well as two first degree misdemeanor charges in exchange for the plea. The State further agreed to a sentencing range of 12 to 18 years, when the record demonstrates that, if convicted by a jury, Bradley could have faced a prison sentence in excess of 30 years. The State also agreed that the sentencing range would include any sentence for the community control sanctions violation. We conclude that the record supports a finding that Bradley was represented by competent and capable counsel. Thus, this factor weighs against finding an abuse of discretion.

{¶ 22} The second and seventh factors are whether the trial court conducted a full Crim.R. 11 hearing and whether Bradley understood the nature of the charges and possible penalties. The record reflects that the trial court conducted a thorough Crim.R. 11 hearing before accepting Bradley's plea of no contest.[3] The trial court directly addressed Bradley to ensure that he could read the plea forms and that he had no physical or mental issues that would interfere with his ability to enter the plea. Bradley denied being under the influence of any alcohol, drugs or medications and when the trial

---

[3] The plea hearing, which is a vital part of this appeal, was not transcribed as required by App.R. 9. Nonetheless, we have reviewed the recording of the plea admitted as State's Exh. 8 during the hearing on the motion to withdraw the plea.

court asked him whether there was any reason he could not understand the terms of the plea agreement, he answered negatively. The trial court correctly explained each of the constitutional rights Bradley would waive by entering his plea. Bradley indicated that he understood each right. The trial court also reviewed each of the offenses to which Bradley was entering a plea, including the possible penalties for each. As will be further discussed, the trial court also informed Bradley of the agreed-upon sentencing range. The trial court informed Bradley that convictions for aggravated vehicular homicide and aggravated vehicular assault required mandatory prison terms, and that a conviction for bribery could be subject to community control sanctions. The trial court informed Bradley that the conviction for bribery would "forever disqualify" him from holding public office, public employment or a position of trust. The trial court informed Bradley that it could impose restitution. The trial court also correctly explained the terms of post-release control. The trial court asked Bradley whether counsel and he had had an adequate opportunity to consult and whether they had discussed possible defenses and motions. Bradley answered affirmatively and also indicated that he was satisfied with his counsel and that he was entering the plea voluntarily. Bradley signed the plea forms in open court and then indicated that he did not have any questions and that he understood the proceedings. The trial court found that Bradley had entered his plea knowingly and voluntarily.

{¶ 23} Despite this, Bradley maintains that because of Brush's alleged assurances, he believed he would receive a 12-year sentence. In conjunction, he claims he did not understand that the sentencing range meant he could get up to 18 years in prison. At the hearing, Bradley testified that that "it just did not sink into my head all the

way." Tr. p. 72. He contends that he did not understand the meaning of the range until, upon his return to jail from the plea hearing, fellow jail inmates explained that the range meant he could be sentenced to as much as 18 years in prison.

{¶ 24} We turn first to the claim that Bradley did not understand that the sentencing range meant he could receive up to an 18-year sentence, and note that we agree with the trial court that the record does not support this argument. First, the trial court explicitly found credible Brush's testimony that he explained the sentencing range to Bradley and that he did not promise Bradley a 12-year sentence. Second, the record demonstrates that the trial court clearly and carefully informed Bradley of the possible prison term for each offense, but that his sentence would be within the agreed upon range. Finally Bradley was informed that the trial court would determine the specific sentence (12, 13, 14, 15, 16, 17, or 18 years) that would be imposed. Bradley indicated he understood this sentencing discussion. The record also demonstrates that Bradley had considerable experience with the criminal justice system; he had entered pleas of guilty or no contest to various offenses, including felonious assault, on at least five prior occasions.

{¶ 25} We next address the claim that Bradley was induced to believe that he would only receive a 12-year sentence despite the sentencing range. This claim is undercut by the fact that, at the time Bradley wrote to the trial court seeking to withdraw his plea, he had yet to be sentenced. Thus, if he actually believed that Brush had promised he would get a 12-year sentence, he had no reason to seek to withdraw his plea regardless of whether the inmates told him that a range meant he could receive 18 years. Further, in an October 10, 2018 recorded telephone call from jail, Bradley can be

heard telling someone that he entered a plea with a sentencing range of 12 to 18 years and that the range meant he could get as few as 12 years but not more than 18. He further stated that his mother was going to hire him a new attorney to try to get a better deal. This recording supports a finding that Bradley understood the terms of the plea and that he merely had a change of heart regarding the agreement.

{¶ 26} On this record, we conclude that Bradley was afforded a full and proper Crim.R. 11 hearing and that Bradley understood the nature of the charges and possible penalties. Thus, this factor weighs against an abuse of discretion determination.

{¶ 27} The record also demonstrates that Bradley was afforded a full and fair hearing on his motion to withdraw. Bradley testified to his version of events and, through counsel, cross-examined Brush during a hearing which lasted more than three hours. The trial court's decision indicated that it considered the applicable law and the evidence presented. Thus, the third and fourth factors weigh against finding an abuse of discretion.

{¶ 28} The eighth factor for consideration is whether Bradley was not guilty of, or had a complete defense to, the charges. As to the bribery charge, the State presented a recording of the jail telephone call made by Bradley to Ricky Knox in which Bradley unequivocally made arrangements to pay a key witness, Joseph Cox, not to appear at trial. Bradley testified that his defense to that charge was that he merely wanted to convince Cox to "not come to court lying on me." Tr. p. 95. The trial court found, and we agree, that on this record Bradley had no conceivable defense to the charge of bribery.

{¶ 29} With regard to the offenses of aggravated vehicular homicide and aggravated vehicular assault, Bradley testified that he was not the driver of the truck involved in the three accidents. He then testified that he did not know whether he had

been driving the truck. However, the record establishes that Bradley was aware of this possible defense prior to entering the plea. Brush, who the trial court found credible, testified that he and Bradley had discussed this possible defense, as well as other possible defenses, prior to the plea. This testimony was corroborated by that fact that, during the call from Bradley to Knox, which occurred months before the plea, Bradley told Knox that he had "paperwork" that proved he was not the driver of the truck involved in the three accidents. During that same call, he stated that Cox had written a statement that Bradley was the driver. Bradley told Knox that if Cox did not show for trial, Bradley would have to be released.

{¶ 30} This court has stated that "[a] court also does not abuse its discretion by denying a withdrawal motion if the motion is based on a complete defense that the defendant was aware of when he entered the plea." *State v. Crawford*, 2d Dist. Montgomery No. 27046, 2017-Ohio-308, ¶ 15, citing *State v. Spurgeon*, 2d Dist. Greene No. 2014-CA-12, 2014-Ohio-4849, ¶ 20. Thus, based upon this record, we conclude that this factor does not support a finding of an abuse of discretion.

{¶ 31} The ninth factor is whether withdrawal of the plea would result in prejudice to the prosecution. In finding that the State would be prejudiced, the trial court noted that "[t]he joint trial of these cases was set to last approximately two weeks, and the State had subpoenaed at least forty-one witnesses at this joint trial. These witnesses included numerous doctors, as well as other expert and lay witnesses. The trial court noted that "[i]f Bradley withdrew his plea, the State would have to attempt to reschedule the trial for dates that would work for most of these witnesses, including one witness from the police

department who is set to retire this year (2019)."[4]  We cannot say that this finding constituted an abuse of discretion.

{¶ 32} Finally, with regard to the fifth and sixth factors, the trial court found that the motion to withdraw was filed within a reasonable time and that it set forth reasons for seeking to withdraw the plea.   Therefore, these factors were in Bradley's favor.

{¶ 33} Balancing the factors relevant to a presentence motion to withdraw a plea, we conclude that the trial court did not abuse its discretion when it concluded that Bradley had a mere change of heart and denied the motion to withdraw.   As stated above, a change of heart is not a sufficient justification to withdraw a plea.   Accordingly, Bradley's assignments of error are overruled.

### III.    Conclusion

{¶ 34} All of Bradley's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Jans
Matthew J. Barbato
Hon. Michael W. Krumholtz

---

[4] Bradley claims that the trial court placed undue emphasis on this factor.   However, we cannot conclude that the trial court placed undue weight on any single factor it considered.