[Cite as *State v. Lloyd*, 2022-Ohio-3760.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                 :       Appellate Case No. 29407
                                           :
v.                                         :       Trial Court Case No. 2021-CR-1932
                                           :
DERRELL LAMONTE LLOYD                       :       (Criminal Appeal from
                                           :       Common Pleas Court)
    Defendant-Appellant                :
                                           :

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of October, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 East Dayton-Yellow Springs Road, Fairborn, Ohio 45324
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Derrell Lamonte Lloyd appeals from his conviction following a plea of guilty to one count of aggravated robbery. Lloyd contends that the trial court erred in overruling his motion to withdraw his guilty plea. In particular, Lloyd contends that the trial court should have applied the more lenient presentence standard to his motion instead of the more stringent post-sentence standard ultimately applied by the trial court. According to Lloyd, he did not understand the mandatory nature of his expected sentence, but his trial counsel's ineffectiveness forced him into pleading guilty. For the following reasons, we affirm the trial court's judgment.

I.      Facts and Course of Proceedings

{¶ 2} On June 23, 2021, a Montgomery County grand jury indicted Lloyd on one count of aggravated robbery (deadly weapon), a first-degree felony in violation of R.C. 2911.01(A)(1), and one count of robbery (deadly weapon), a second-degree felony in violation of R.C. 2911.02(A)(1). The indictment involved events that occurred on June 13, 2021.

{¶ 3} A jury trial commenced on October 13, 2021. During a break that occurred on the second day of trial, as the State was presenting its last witness, Lloyd decided to change his plea to guilty to aggravated robbery. Transcript of Proceedings ("Tr."), p. 352. After a plea colloquy, the trial court accepted the plea and found Lloyd guilty of aggravated robbery. Tr. p. 354, 366-367. Lloyd responded in the affirmative when he was asked by the trial judge whether he was satisfied with his trial counsel. Tr. p. 365. The trial court requested a presentence investigation and scheduled the matter for

sentencing.

{¶ 4} On October 28, 2021, prior to the sentencing hearing, Lloyd filed a motion to withdraw his guilty plea. According to the motion, Lloyd wanted to withdraw his plea because (1) his trial counsel was ineffective by failing to prove all the lies that the complaining witness told the jury; (2) Lloyd was not aware that he could have pled to a lesser-included offense; and (3) Lloyd did not understand that his prison sentence would be mandatory. Trial counsel moved to withdraw as Lloyd's counsel due to the conflict of interest arising from the ineffective assistance of counsel claim in the motion to withdraw the guilty plea.

{¶ 5} Lloyd was appointed new counsel and a hearing on his motion was held on January 3, 2022. Lloyd and his original trial counsel, Lucas Wilder, testified at the hearing. Lloyd explained at the hearing that he only saw his trial counsel a couple of times before his trial began. Tr. p. 385. He testified that Wilder promised him that he would be acquitted. Tr. p. 389, 397. According to Lloyd, his trial counsel did not ask the numerous questions that Lloyd had written for the cross-examination of the State's complaining witness. Rather, his counsel only asked four or five questions in total of the witness. Tr. p. 392, 395, 406. Lloyd repeated over and over that his trial counsel did nothing at the trial. Tr. p. 389, 393-394, 397, 400-401, 405. Therefore, Lloyd felt pressured to enter a guilty plea in order to eliminate the risk of going to prison for 11 years. Tr. p. 393-394, 396, 400-401. Lloyd testified that he did not understand what mandatory meant when he agreed to plead guilty. Tr. p. 398. He stated that his trial counsel explained it to him by saying "you just got to do three years no matter what." Tr.

p. 387.   Lloyd also noted that his trial counsel told him several times that he would not have to do three years, because the trial judge was retiring and likely would grant him judicial release.   Tr. p. 387-388.

**{¶ 6}** Attorney Wilder also testified at the hearing.   According to Wilder, he met with Lloyd approximately five times before the trial began.   Tr. p. 418, 431.   Wilder presented Lloyd with the paper discovery and reviewed the video discovery with Lloyd in person on Wilder's laptop or cell phone.   Tr. p. 418.   Wilder conceded that there initially had been some confusion regarding the mandatory nature of the sentence resulting from his client's plea, because they were unsure whether Lloyd had a prior felony.   But this confusion was cleared up by the prosecutor and judge during the plea hearing.     Tr. p. 422, 443.   Wilder explained that prior to the second day of the trial, Lloyd was insistent that there would be no plea deal.   But then Lloyd brought up the idea of pleading guilty during the second day of the trial.   Tr. p. 420-421, 428-429, 438.   Wilder discussed this possibility with him and then approached the State and trial court about the change in plea.   Wilder stated that he did not guarantee an acquittal to Lloyd and that he would never promise judicial release unless that information came directly from the judge.   Tr. p. 423, 426, 442.

**{¶ 7}** On January 14, 2022, the trial court issued a written decision overruling Lloyd's motion to withdraw his guilty plea.   The matter proceeded to a sentencing hearing.   On February 24, 2022, the trial court sentenced Lloyd to a minimum prison term of three years and a maximum term of four and one-half years.   Lloyd filed a timely notice of appeal.

II.     The Trial Court Did Not Abuse Its Discretion In Overruling Lloyd's Motion To Withdraw His Guilty Plea

{¶ 8} Lloyd's first assignment of error states:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO WITHDRAW GUILTY PLEA.

{¶ 9} We review a trial court's decision on a motion to withdraw a plea for an abuse of discretion. *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 15, citing *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. In order to find an abuse of discretion, "[w]e must find that the trial court's ruling was 'unreasonable, arbitrary or unconscionable.'" *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992), quoting *State Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 10} Before analyzing the trial court's decision for an abuse of discretion, however, we must determine which of two standards apply to his motion. Crim.R. 32.1 provides:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶ 11} Under the foregoing rule, a presentence motion to vacate a guilty plea "should be freely and liberally granted." *Xie* at 527. Nevertheless, even under the

presentence standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a presentence plea-withdrawal motion. *Id.* The presentence standard, however, is far more lenient than the "manifest injustice" standard applicable to post-sentence motions. *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10. A "manifest injustice" is a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice. *State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030, ¶ 7 (1st Dist.), citing *Kreiner* at 208. The term "has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." (Citation omitted.) *Smith* at 264.

{¶ 12} Lloyd filed his motion before the trial court sentenced him, which normally would result in the application of the presentence standard. But "[w]hen a defendant discovers before sentencing the particular sentence a trial court intends to impose, we have held that a pre-sentence motion to vacate his plea ordinarily should be treated as a post-sentence motion. This is so because a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise." *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181 ¶ 8, citing *State v. Wallen*, 2d Dist. Montgomery No. 21688, 2007-Ohio-2129, ¶ 22.

{¶ 13} The trial court clearly informed Lloyd at the plea hearing what his sentence would be. The State did not agree to this sentence. Therefore, the trial court applied the more stringent test for post-sentence motions. Lloyd contends that the "trial court

erred in determining that motions to withdraw a plea after a defendant learns of his probable sentence should be weighed under the more stringent 'manifest injustice' standard of Crim.R. 32.1." Appellant's Brief, p 5. While noting that the trial court's decision was in accordance with prior appellate decisions in this district, Lloyd urges us to reconsider and reverse the prior holdings of this Court. We decline Lloyd's invitation to revisit our precedent on this issue.

{¶ 14} In Lloyd's motion to withdraw his guilty plea, he stated that (1) his trial counsel was ineffective by failing to prove all the lies that the complaining witness told the jury; (2) Lloyd was not aware he could have pled to a lesser-included offense; and (3) Lloyd did not understand that his prison sentence would be mandatory. In rejecting Lloyd's argument that his trial counsel was ineffective, the trial court specifically found that Lloyd was not credible "because his testimony during the hearing * * * was often contradictory or was later determined to be untruthful." The trial court continued:

> Notably, in reviewing the video footage of Wilder's cross-examination of the victim, the Court noted that Wilder spent forty minutes on his initial cross examination of the victim and even asked the victim follow-up questions after the State's re-direct. During the initial cross-examination of the victim, Wilder asked dozens of questions. This starkly contradicts Lloyd's testimony that Wilder only asked the victim four questions and that the cross-examination only lasted five to six minutes. Further, the Court found that Lloyd's testimony about a lack of a criminal record troubling as Lloyd has a prior first or second-degree felony conviction in another state

and Lloyd confirmed this conviction during the plea colloquy hearing in October 2021.   * * * Additionally, when reviewing the trial footage, it was apparent that Wilder had a case strategy and prepared and utilized exhibits when he cross-examined the victim and the State's other witnesses in a very organized approach.   The Court points out that Lloyd even told the Court that he was satisfied with Wilder's representations at the plea colloquy hearing.   * * *   Further, Lloyd admits that he waited until almost all of the State's case was presented to the jury and that he knew from observing the jury that the jury would convict him. * * *

January 14, 2022 Decision, p. 14.

{¶ 15} The trial court also rejected Lloyd's assertions that he did not understand the mandatory component of the sentence.   The court explained:

While Wilder admitted that there was some initial confusion over the mandatory sentence because it was unclear whether Lloyd's prior felony in another state would apply to this sentence, this was resolved during the plea hearing.   Importantly, this Court gave ample explanation regarding *Reagan-Tokes* and informed Lloyd that a mandatory sentence meant that he would be ineligible for judicial release, furlough, or earned credit. Moreover, Lloyd stated that when he asked Wilder what this meant, Wilder told him that * * * it meant Lloyd would have to serve three years in prison no matter what.   The Court believes that Lloyd's articulation of what Wilder communicated to him contradicts Lloyd's position that he did not understand

his mandatory sentence. Further, after explaining the meaning of a mandatory sentence to Lloyd in the plea hearing, the Court asked Lloyd if he still wished to continue with the plea. Lloyd verbalized to this Court that he wished [to] proceed with the plea. Accordingly, this Court believes that Lloyd actually understood the mandatory nature of his sentence at the time he signed the plea form and that Lloyd merely changed his mind a few weeks later. * * *

*Id.* at 15.

{¶ 16} The trial court concluded by noting that sustaining Lloyd's motion would be highly prejudicial to the State and would thwart the jury system. According to the trial court, many individuals spent a significant amount of time on the trial, and Lloyd was able to obtain the benefits of viewing the State's case strategy and observing how the witnesses actually performed. *Id.* at 15-16. Further, sustaining Lloyd's motion would set a damaging precedent of allowing defendants to use a plea withdrawal as an attempt to "cherry-pick" a more favorable jury. *Id.* at 16.

{¶ 17} The trial court's findings and conclusions are supported by the record. The trial court did not find credible Lloyd's testimony regarding his attorney's effectiveness or his testimony that he did not understand what mandatory meant at the time he entered his guilty plea. We defer to the trial court on credibility determinations. Further, the written plea form signed by Lloyd stated that the prison term for aggravated robbery was "mandatory and cannot be reduced by judicial release, earned credit, or furlough[.]" Lloyd also conceded that his attorney had explained to him that mandatory meant "you

just got to do three years no matter what." Finally, a review of the trial transcript reveals that Wilder's representation of Lloyd went well beyond what Lloyd testified to at the hearing on his motion to withdraw his guilty plea.

{¶ 18} The trial court did not abuse its discretion in denying Lloyd's motion to withdraw his guilty plea. The first assignment of error is overruled.

III.  A Stipulation of the Parties Renders The Second Assignment of Error Moot

{¶ 19} Lloyd's second assignment of error states:

THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S GUILTY PLEA

{¶ 20} In his appellate brief, Lloyd contended that "[t]he trial court made a finding that the plea was 'involuntarily.' (Tr. 367) Accordingly, appellant's guilty plea runs afoul of the United States and Ohio Constitution." Appellant's Brief, p. 7. Lloyd's second assignment of error relies completely on his citation to page 367 of the Transcript.

{¶ 21} On September 6, 2022, Lloyd and the State filed a "STIPULATION TO CORRECT RECORD PURSUANT TO APP.R. 9(E)." In that filing, the parties stipulated and agreed, based on a review of the official video from October 14, 2021, that page 367, lines 8-10, of the written transcript should be corrected to read as follows:

> The Court further finds Mr. Lloyd understood the effect of his guilty plea, that said plea was made voluntarily, and that there is a factual basis for this guilty plea.

{¶ 22} Based on the parties' stipulation, the second assignment of error is overruled.

IV.     Conclusion

{¶ 23}   Having overruled both of Lloyd's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
David R. Miles
Hon. Kimberly Melnick